916 A.2d 1152 (2007)
In the Interest of K.A.P., Jr. (DOB 9-18-85), a minor.
Appeal of K.A.P., Jr., a minor.
Superior Court of Pennsylvania.
Argued October 24, 2006.
Filed January 19, 2007.
*1154 Joseph P. Burt, Erie, for appellant.
Matthew J. McLaughlin, Erie, for County of Erie, participating party.
BEFORE: LALLY-GREEN, McCAFFERY, and KELLY, JJ.
OPINION BY LALLY-GREEN, J.:
¶ 1 Appellant, K.A.P., Jr., appeals from the order entered on April 5, 2006, committing Appellant to one year of involuntary civil commitment for juvenile sexual offenders under Chapter 64 of the Judicial Code.[1] We affirm.
¶ 2 The factual and procedural history of the case is as follows. On February 26, 2003, Appellant was adjudicated delinquent based on a series of sexual and non-sexual acts involving five different female victims. On March 6, 2003, Appellant was committed to the New Castle Youth Development Center.
¶ 3 On March 4, 2005, Appellant assaulted two employees of the juvenile facility. The assault charges proceeded through the criminal justice system, rather than the juvenile court system. Appellant pled *1155 guilty to charges of aggravated assault and harassment. On July 20, 2005, the Court of Common Pleas of Lawrence County sentenced Appellant to a prison term of 15 to 30 months, followed by five years of probation. When Appellant turned 20 years old on September 18, 2005, he was incarcerated in SCI-Fayette.
¶ 4 Upon notification from the Sexual Offenders Assessment Board that Appellant was in need of involuntary treatment, the trial court held a hearing on February 13, 2006. The court found prima facie evidence that Appellant was a sexual offender in need of involuntary commitment. Thus, the Erie County Solicitor's Office filed a petition for involuntary commitment on February 21, 2006. The court held another hearing on March 10, 2006, and granted the petition on April 5, 2006. This appeal followed.[2]
¶ 5 Appellant raises five issues on appeal, which we paraphrase as follows:
1. Did the trial court err by subjecting Appellant, a state prisoner, to involuntary civil commitment where that program applies only to offenders that are currently housed in a juvenile facility?
2. Is Chapter 64 of the Judicial Code, providing for civil commitment of juvenile sex offenders, void for vagueness?
3. Did the court err by applying the law retroactively?
4. Does Chapter 64 of the Judicial Code, providing for civil commitment of juvenile sex offenders, violate the constitution by violating equal protection principles?
5. Does Chapter 64 of the Judicial Code, providing for civil commitment of juvenile sex offenders, violate the constitution by allowing cruel and unusual punishment?
Appellant's Brief at 3.
¶ 6 First, Appellant argues that the involuntary civil commitment program cannot apply to him because: (1) that program applies only to offenders who are in a juvenile facility as of their 20th birthday; and (2) Appellant was a state prisoner on that date (and, indeed, he remains a state prisoner).
¶ 7 Appellant's argument is one of statutory interpretation. Our Supreme Court recently set forth the relevant principles of statutory construction, and our standard of review, as follows:
Because the present claim raises an issue of statutory construction, this Court's standard of review is plenary. See Hazleton Area School Dist. v. Zoning Hearing Bd., 566 Pa. 180, 778 A.2d 1205, 1210 (Pa.2001). Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a); see also Commonwealth v. MacPherson, 561 Pa. 571, 752 A.2d 384, 391 (Pa.2000). In pursuing that end, we are mindful that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "as a general rule, the best indication of legislative intent is the plain language of a statute." See Bradley, 834 A.2d at 1132 (citing Commonwealth v. Gilmore [Gilmour] Mfg. Co., 573 Pa. 143, 822 A.2d 676, 679 (Pa. 2003)). In reading the plain language, "words and phrases shall be construed *1156 according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, inter alia: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant. See, e.g., Commonwealth v. Driscoll, 485 Pa. 99, 401 A.2d 312, 316 (Pa.1979).
Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, inter alia, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.
Commonwealth v. Shiffler, 583 Pa. 478, 879 A.2d 185, 189-190 (2005).
¶ 8 Section 6403 sets forth the criteria for court-ordered involuntary commitment as follows:[3]

*1157 § 6403. Court-ordered involuntary treatment
(a) Persons subject to involuntary treatment.  A person may be subject to court-ordered commitment for involuntary treatment under this chapter if the person:
1. Has been adjudicated delinquent for an act of sexual violence[.]
2. Has been committed to an institution or other facility pursuant to section *1158 6352 (relating to disposition of delinquent child) and remains in the institution or other facility upon attaining 20 years of age.
3. Is in need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.
42 Pa.C.S.A. § 6403(a) (emphasis added). Again, Appellant argues that pursuant to the plain language of the statute, he is not eligible for involuntary treatment because was not in the juvenile facility on his 20th birthday; rather, he was in state prison.
¶ 9 While we agree that the literal language of the statute appears to support Appellant's interpretation, we must bear in mind that the overarching goal of statutory interpretation is to ascertain the intent of the Legislature. Shiffler. Thus, we should not interpret the statute strictly and literally if doing so would create a result that is absurd, unreasonable, or impossible to execute. Id. Moreover, the Legislature intends that all of its provisions shall be "effective and certain." Id.
¶ 10 In the instant case, Appellant's interpretation would lead to an absurd and unreasonable result that would defeat the Legislature's intent that all provisions be effective and certain. It is undisputed that if Appellant had not assaulted employees of his juvenile facility, he would have remained in that facility on his 20th birthday, rather than in state prison. It is also undisputed that he would have been subject to Chapter 64's provisions.
¶ 11 We fail to see how Appellant's unilateral, intentional and criminal actions should compel a different result, simply because those actions placed him in state prison rather than a juvenile facility. The Legislature obviously could not have expected or intended Chapter 64 to be rendered void by the intentional and criminal actions of the very people that the law is intending to benefit. If we were to adopt Appellant's interpretation, we would do nothing but encourage similarly situated individuals to avoid Chapter 64 by similar means (or by less violent means, such as simply escaping from the facility). Such an interpretation would severely impair the certainty and effectiveness of the statute. Also, such an interpretation would deprive the public of the protections that Chapter 64 provides to potential victims of juvenile sexual offenders.[4]
¶ 12 Thus, we hold that as a matter of statutory interpretation, the literal language of the statute must yield to the overarching intent of the Legislature that Chapter 64 cannot be defeated by Appellant's intentional acts. Appellant's first claim fails.
¶ 13 Appellant's second argument is that Chapter 64 is unconstitutionally void for vagueness. "At the outset, we note that our standard of review when considering appellant's constitutional challenges is plenary, as these challenges involve pure questions of law." Commonwealth v. Leddington, 908 A.2d 328, 331 (Pa.Super.2006). "A statute will be found unconstitutional only if it clearly, palpably, and plainly violates constitutional rights. Under well-settled principles of law, there is a strong presumption that legislative enactments do not violate the constitution. Further, there is a heavy burden of persuasion upon one who questions the constitutionality of an Act." Id. at 332 (citations omitted).
*1159 ¶ 14 Appellant specifically challenges section 6403(d), which states, in relevant part:
§ 6403. Court-ordered involuntary treatment
(d) Determination and order.  Upon a finding of clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence, an order shall be entered directing the immediate commitment of the person for inpatient involuntary treatment[.]
42 Pa.C.S.A. § 6403(d).
¶ 15 Appellant argues that the phrase "serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence" is impermissibly vague, because it does not provide judges with any guidance other than their own ad hoc opinions and personal predilections.
¶ 16 In a series of recent opinions, this Court considered and rejected strongly similar challenges to Megan's Law II, 42 Pa.C.S.A. §§ 9791-9799.7. Leddington, 908 A.2d at 333, citing Commonwealth v. Mullins, 905 A.2d 1009 (Pa.Super.2006), Commonwealth v. Howe, 842 A.2d 436, 445 (Pa.Super.2004) (holding the terms "sexually violent predator," "personality disorder," "mental abnormality," "predatory," and "likely" are not unconstitutionally vague), Commonwealth v. Kopicz, 840 A.2d 342, 348 (Pa.Super.2003), and Commonwealth v. Rhoads, 836 A.2d 159, 162-163 (Pa.Super.2003). Just like Megan's Law II, Chapter 64 contains provisions where a trial court is asked to predict the likelihood that an offender will commit an act of sexual violence as a result of a personality disorder or mental abnormality. Thus, the cases interpreting Megan's Law II are highly instructive when interpreting Chapter 64. Appellant does not cite any of these cases, and does not develop any meaningful argument as to why Chapter 64 should be viewed as unconstitutionally vague when Megan's Law II is not. We note that Chapter 64 does contain the unique phrase, "serious difficulty in controlling sexually violent behavior," which is not found in Megan's Law II. In our view, however, that undefined phrase is no more vague than the words and phrases challenged in the Megan's Law cases set forth above. Thus, for the reasons set forth in the cases above, Appellant's second claim fails.
¶ 17 Third, Appellant argues that the trial court improperly applied Chapter 64 "retroactively." This Court recently engaged in a scholarly discussion of retroactivity, as follows:
Our understanding of the legal meaning of retroactivity is shaped by pronouncements from the highest courts in the land. As the U.S. Supreme Court has stated, "[a] statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." Landgraf v. U.S.I. Film Products, 511 U.S. 244, 269-70, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (citations omitted). The Pennsylvania Supreme Court has offered a similar directive: "a statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation." In re R.T., 2001 PA Super 157, 778 A.2d 670, 679 (Pa.Super.2001), appeal denied, 568 Pa. 618, 792 A.2d 1254 (2001) (quoting Creighan v. City of Pittsburgh, 389 Pa. 569, 575-76, 132 A.2d 867, 871 (1957) (citation omitted)). "Rather, the court must ask whether the new provision attaches new legal consequences to events *1160 completed before its enactment." Landgraf, 511 U.S. at 269-70[, 114 S.Ct. 1483]. Retroactive application occurs only when the statute or rule "relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired." R.T., 778 A.2d at 679 (quoting McMahon v. McMahon, 417 Pa.Super. 592, 612 A.2d 1360, 1364 (Pa.Super.1992)).
Our Supreme Court and this Court have also considered the issue of retroactivity in terms of whether or not the statute in question affects vested rights.
Where . . . no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events prior to that date . . .
A `vested right' is one that `so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.'

R.T., 778 A.2d at 679 (quoting Creighan, 389 Pa. at 575, 132 A.2d at 871 and Black's Law Dictionary 1324 (7th ed.1999)).
Warren v. Folk, 886 A.2d 305, 308 (Pa.Super.2005).
¶ 18 Appellant suggests that Chapter 64 is retroactive because it "increases his liability for past conduct," i.e., his prior juvenile offense. Appellant's Brief at 14. We disagree. Chapter 64 does not directly relate to the juvenile's prior offense in any way. The law does not give the prior offense any different legal effect than it had when he committed the offense. Rather, Chapter 64 relates to the juvenile's current and continuing status as a person who suffers from "a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." 42 Pa.C.S.A. § 6403(d). It may be true that a juvenile would not be subject to Chapter 64 but for the fact that he committed a prior juvenile offense. This, however, is not the test for retroactivity. See Warren (a statute is not retroactive just because it relies on past events for operation); see also Lehman v. Pa. State Police, 576 Pa. 365, 839 A.2d 265, 274 (2003) (same principles of retroactivity apply when determining if a statute violates the ex post facto clause). This claim fails.[5]
¶ 19 Fourth, Appellant argues that Chapter 64 violates equal protection principles. Our Supreme Court set forth the proper framework for evaluating such a claim as follows:
We have stated that in analyzing equal protection claims made under the Pennsylvania Constitution, we will use the standards the United States Supreme Court uses when analyzing equal protection claims made under the Fourteenth Amendment of the United States Constitution. Fischer, 502 A.2d at 121. In Commonwealth v. Albert, 563 Pa. 133, 758 A.2d 1149 (Pa.2000), we noted that the essence of the equal protection doctrine is that "`like persons in like circumstances will be treated similarly[,]'" but recognized that the right to equal protection "`does not absolutely prohibit the Commonwealth from classifying individuals for the purposes of receiving *1161 equal treatment[.]'" Id. at 1151 (citations omitted).
The legal framework for evaluating an equal protection challenge made to a particular statutory classification consists of three different types of classifications, each of which calls for its own standard of review. Fischer, 502 A.2d at 121. We have described this framework as follows:
The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.

Albert, 758 A.2d at 1152 (citations omitted).
Probst v. DOT, Bureau of Licensing, 578 Pa. 42, 849 A.2d 1135, 1143 (2004).
¶ 20 In the instant case, Appellant argues that the "rational basis" test applies, and that Chapter 64 lacks any rational basis for treating juvenile offenders different from similarly-situated adult offenders.[6] In Probst, our Supreme Court described the rational basis test as follows:
In applying the rational basis test, we have adopted a two-step analysis. First, we determine whether the challenged statute seeks to promote any legitimate interest or public value. If so, we then determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests. In undertaking this analysis, we are free to hypothesize reasons the legislature might have had for the classification, and will not declare a genuine classification void even if we might question the soundness or wisdom of the distinction. Furthermore, we keep in mind that because a presumption of constitutionality attaches to any lawfully enacted legislation, the burden is upon the party attacking a statute to rebut the presumption of constitutionality by a clear, palpable, and plain demonstration that the rational basis test is not met.
Id. at 1144 (citations omitted).
¶ 21 Appellant raises several specific arguments in support of his equal protection claim. First, he argues that the law "provides harsher treatment for youthful sex offenders in the juvenile system than it provides for offenders of the same age in the adult system." Appellant's Brief at 14-15. In a related claim, Appellant argues that the law applies to those who reach age 20 and are in a juvenile facility, but it does not apply to similarly situated youths in an adult facility. Id. at 15.
¶ 22 We have two responses to this claim. First, as noted above, the premise of Appellant's claim is incorrect. Chapter 64 can apply to juvenile offenders (such as Appellant) who reach age 20 while in a state prison. Second, assuming arguendo that Appellant's premise is correct, he develops no argument as to how or why the distinction is irrational. This claim fails for lack of development.
*1162 ¶ 23 Next, Appellant argues that Chapter 64 treats juvenile sex offenders more harshly than Megan's Law treats similar adult sex offenders. Specifically, Appellant notes that under Chapter 64, juvenile offenders are subject to involuntary civil commitment, while under Megan's Law, adult offenders are subject "only" to notification and registration provisions. Appellant's Brief at 15.
¶ 24 We see a rational basis for this distinction. First, we note that the statute seeks to promote a legitimate public value. As Appellant himself notes, juveniles ordinarily leave the jurisdiction of the juvenile court system when they reach age 21. See 42 Pa.C.S.A. § 6302. In passing Chapter 64, the Legislature foresaw that some of these juveniles were sexual offenders (and potential re-offenders) in need of treatment for their own benefit and for the protection of the public. The Legislature provided a program of involuntary civil commitment to serve those needs. In the absence of such a program, these offenders would presumably be released outright once they reached age 21.
¶ 25 Next, we note that the age distinctions in Chapter 64 are rationally related to that legitimate goal. While a similar program of civil commitment does not exist for adult offenders under Megan's Law,[7] Appellant fails to recognize that adult sexual offenders usually serve a term of imprisonment before they are released. Adult offenders may also be subject to probation thereafter. Thus, the criminal justice system already exists to protect the public from adult offenders. We also note that state prisons may provide mental health services to sex offenders. Even if prisons do not provide such services, the Legislature may reasonably believe that juveniles are more amenable to treatment than adult offenders. Because we can see a rational basis for the distinctions between Chapter 64 and Megan's Law, Appellant's equal protection claim fails.
¶ 26 Finally, Appellant argues that Chapter 64's involuntary civil commitment programs constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution.
¶ 27 Our first inquiry is whether Chapter 64 constitutes any form of punishment. Commonwealth v. Kopicz, 840 A.2d 342 (Pa.Super.2003). To answer this question, our Supreme Court has adopted a two-part test set forth by the United States Supreme Court. Commonwealth v. Williams, 574 Pa. 487, 832 A.2d 962 (2003), citing Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); see also Lehman v. Pa. State Police, 576 Pa. 365, 839 A.2d 265 (2003). Our Supreme Court recently summarized the test as follows:
The Court's traditional test requires a court to first "inquire whether the legislature's intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent." Williams II, 574 Pa. at 503, 832 A.2d at 971[.] To analyze the latter factor, the Supreme Court employs a balancing test of several factors first announced in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). The Mendoza-Martinez factors include:
(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded *1163 as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment  retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and
(7) whether it appears excessive in relation to the alternative purpose assigned.
Commonwealth v. Wilson, 589 Pa. 559, 910 A.2d 10 (2006) (citations omitted).
¶ 28 Unfortunately, Appellant does not even attempt to structure his argument according to the framework set forth above. Instead, Appellant resorts to assumptions and hyperbole, such as his assertion that Chapter 64 amounts to "a lifetime of incarceration." Appellant's Brief at 19.[8] We are constrained to conclude that this issue is waived because it is inadequately developed.[9]
¶ 29 Within the final section of his brief, Appellant develops a claim that Chapter 64 violates due process by keeping juvenile sex offenders in indefinite civil commitment based on vague or weak predictions of future dangerousness. Appellant cites, inter alia, Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).
¶ 30 In Foucha, a criminal defendant in Louisiana was acquitted by reason of insanity. The defendant was placed in a mental hospital, where he regained his sanity. Louisiana law allowed the defendant to remain confined in the mental hospital unless he proved that he was no longer dangerous. The United States Supreme Court struck down that law on due process and equal protection grounds. The Court reasoned that the state presented no convincing basis for depriving a sane but potentially dangerous individual of his fundamental liberty interest without fundamental due process protections, such as proof of continued insanity and dangerousness by clear and convincing evidence. Id. at 85-86, 112 S.Ct. 1780.
¶ 31 Chapter 64 is readily distinguishable. Under Chapter 64, the burden is on the Commonwealth to prove by clear and convincing evidence that the juvenile has a mental abnormality or personality disorder that makes the juvenile likely to engage in an act of sexual violence. Moreover, the juvenile has the right to counsel, the right to expert assistance, the right to present evidence, and the right to cross-examine witnesses. After one year of civil commitment, it remains the Commonwealth's burden to prove by clear and convincing evidence that the juvenile has serious difficulty controlling his sexually violent behavior due to the mental abnormality or personality disorder. If the Commonwealth fails to carry its burden of proof, the juvenile is discharged. Indeed, the director of the facility can petition the court for a hearing at any time if he determines that the juvenile no longer has *1164 serious difficulty in controlling sexually violent behavior. 42 Pa.C.S.A. § 6404(c)(1). The juvenile himself can also file such a petition. Thus, Act 64 contains within it adequate protections against erroneous or outdated determinations. As such, Chapter 64 comports with the due process protections required for involuntary civil commitment set forth in Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Accord Maldonado, supra (registration and notification provisions of Megan's Law II do not violate due process); In re Hancock, 719 A.2d 1053 (Pa.Super.1998). Appellant is not entitled to relief on this claim.
¶ 32 For the reasons set forth above, we affirm the trial court's civil commitment order.
¶ 33 Order affirmed.
NOTES
[1] 42 Pa.C.S.A. §§ 6401-6409. Chapter 64, sometimes known as "Act 21," was enacted pursuant to Act 21 of 2003 (P.L. 97, August 14, 2003, effective February 10, 2004).
[2] Appellant filed a timely original and amended concise statement of matters complained of on appeal under Pa.R.A.P.1925, raising the issues that he now raises on appeal.
[3] Section 6403 is one key component of Chapter 64, which sets forth a comprehensive scheme for treating sexually violent juveniles before they "age out" of the juvenile system. The Office of Attorney general, as amicus curiae, has set forth a comprehensive summary of Act 21 procedures as follows:

Act 21 amended the Juvenile Act to provide for the assessment and civil commitment of certain sexually violent juveniles. The Act requires that the State Sexual Offenders Assessment Board ("the Board") evaluate specified juveniles before they leave the jurisdiction of the juvenile system. 42 Pa.C.S. §§ 6302, 6358(a). The juveniles to be evaluated are those, (1) who have been found delinquent for an act of sexual violence; (2) who have been committed to an institution or facility pursuant to the Juvenile Act; and, (3) who remained in that facility on their 20th birthdays. 42 Pa.C.S. § 6358(a).
Under the Act, 90 days before the affected juvenile's 20th birthday, the probation officer is required to notify the Board of the juvenile's status. 42 Pa.C.S. § 6358(b). The officer must also assist the Board in obtaining access to the child and any information that the Board requires to perform its assessment. Id.
To facilitate the Board's receipt of information, the Act permits the Board to inspect the Juvenile Court's files and records. 42 Pa.C.S. § 6307(6.4). The Act also amended the provisions of Megan's Law regarding Board assessments to require all state, county, and local agencies to provide copies of records and information required by the Board for the assessment of delinquent children. 42 Pa. C.S. § 9753.4(c).
Upon receipt of the necessary information, the Board is charged with determining whether the juvenile is in need of commitment for involuntary treatment due to a mental abnormality or a personality disorder which results in the juvenile having serious difficulty in controlling sexually violent behavior. 42 Pa.C.S. § 6358(c). A mental abnormality is "a congenital or acquired condition . . . affecting the person's emotional or volitional capacity." 42 Pa.C.S. § 6402.
The Board must provide its assessment to the Court of Common Pleas. 42 Pa.C.S. § 6358(c). The Court, in turn, provides the assessment to the probation officer, the district attorney, the county solicitor or his designee and the juvenile's attorney. 42 Pa.C.S. § 6358(d).
If the Board has decided the juvenile is in need of involuntary treatment, the Court must hold a dispositional review hearing to determine whether there is a prima facie case that the juvenile is in need of involuntary treatment. 42 Pa.C.S. § 6358(e), (f). The probation officer, the county solicitor or his designee, and the juvenile's attorney are to be present. 42 Pa.C.S. § 6358(e).
If the Court determines that there is a prima facie case, it must direct the county solicitor or his designee to petition the Court to involuntarily commit the juvenile for treatment. 42 Pa.C.S. § 6358(f). The petition must be in writing and in a form adopted by the Department of Public Welfare. 42 Pa. C.S. § 6402(b). It must set forth the facts which constitute reasonable grounds to believe the juvenile meets the criteria for court-ordered involuntary treatment and it must include the Board's assessment. Id.
The criteria for commitment are that the juvenile has been adjudicated delinquent for an act of sexual violence, he was committed to an institution or facility for delinquent children, he was in such institution on his 20th birthday and, he "is in need of involuntary treatment due to a mental abnormality or personality disorder that results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." 42 Pa.C.S. § 6403(a).
The juvenile is given a notice of the hearing and a copy of the petition. 42 Pa.C.S. § 6403(a)(3). He is also notified that he has a right to counsel and that if he cannot afford one, counsel will be appointed. In addition, he is informed that he has the right to the assistance of an independent expert in the field of sexually violent behavior and that if he cannot afford such an expert, the Court will provide a reasonable fee to allow him to hire one. 42 Pa.C.S. § 6403(a)(4).
The juvenile may not be compelled to testify at the hearing, but he retains the right to present and cross-examine witnesses. 42 Pa. C.S. § 6403(c). The hearing is public and a record is made. Id.
If the Court determines that the juvenile meets the criteria for commitment by clear and convincing evidence, it issues an order committing the juvenile for involuntary treatment at an inpatient facility designated for the purpose by the Department of Public Welfare. 42 Pa.C.S. §§ 6402, 6403(d). The term of the commitment is one year, unless the juvenile petitions the Court for release or the director of the facility determines the juvenile no longer has serious difficulty in controlling sexually violent behavior. 42 Pa.C.S. § 6404(a), (c)(1), (4). If the director makes that determination, he must petition the Court for a hearing. 42 Pa.C.S. § 6404(c)(1).
Notice of the petition is given to the juvenile, his attorney, the Board, the district attorney and the county solicitor or his designee. Id. The Board must then conduct a new assessment of the juvenile and provide it to the Court before a hearing is held. 42 Pa.C.S. § 6404(c)(2). The juvenile is entitled to have counsel at the hearing and if he cannot afford one, the Court will appoint counsel. 42 Pa. C.S. § 6404(c)(1).
If the Court determines by clear and convincing evidence that the juvenile "continues to have serious difficulty controlling sexually violent behavior due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence," the Court continues the commitment. 42 Pa. C.S. § 6404(c)(3). Otherwise, the Court must discharge the juvenile.
In the absence of a petition from the director of the facility or the juvenile, the Court conducts a hearing to review the juvenile's status on an annual basis. 42 Pa.C.S. § 6404(b). For the purposes of that hearing, the director of the facility submits an evaluation of the juvenile and the Board conducts a new assessment addressing whether the juvenile continues to meet the criteria for commitment. The hearing is conducted using the same procedures and evidentiary standards used in the initial commitment proceeding. 42 Pa.C.S. § 6404(b)(1).
[4] We recognize that penal statutes are to be construed strictly. We see no basis for construing Chapter 64 as a penal statute, particularly given the fact that Appellant has developed no coherent argument on this topic. See footnote 9, infra.
[5] In a related claim, Appellant argues that Chapter 64 is retroactive because it upset his expectation that he would be free from the jurisdiction of the juvenile court after he reached age 21. Even assuming that Appellant's premise is valid, he has developed no coherent argument that this expectation qualifies as a "vested right." This claim fails as well.
[6] Given that Appellant limits his argument in this fashion, we need not decide whether any other level of scrutiny should apply.
[7] Megan's Law does require sexually violent predators to attend monthly counseling sessions. Commonwealth v. Maldonado, 576 Pa. 101, 838 A.2d 710, 714 (2003), citing 42 Pa. C.S.A. § 9799.4.
[8] Appellant cites Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Robinson concerned criminalization of addiction. Roper declared that the death penalty could not be applied to juvenile offenders. Those cases are obviously distinguishable on their facts.
[9] The trial court reasoned that Chapter 64 does not constitute punishment because: (1) the stated goal of the statute was rehabilitation and treatment, not punishment; and (2) objectively, the statute does not impose punishment because each term of civil commitment is for only one year, with annual reviews to be submitted to the Court. While we appreciate and respect the trial court's analysis, we decline to address the merits of Appellant's claim at this juncture. Doing so could prejudice the outcome of a future case where the appellant's brief does provide a more thorough analysis of these important issues.