**In the Interest of T.B., a Minor, Appellant.**

**In the Interest of T.B., a Minor, Appellant.**

Superior Court of Pennsylvania.

Argued March 5, 2013.

Filed June 24, 2013.

Karen L. Domalakes, Public Defender, Frackville, for appellant.

Christine A. Holman, Assistant District Attorney, Frackville, for Commonwealth, appellee.

BEFORE: BENDER, J., SHOGAN, J., and FITZGERALD, J.*

OPINION BY BENDER, J.

In this decision, we address appeals from two orders, both of which derive from an assessment performed by the State Sexual Offenders Assessment Board ("SOAB") pursuant to 42 Pa.C.S. § 6358 to determine whether T.B. should be subject to continued confinement for mental health treatment due to his commission as a juvenile of crimes of sexual violence. In the first appeal, from the order of October 19, 2011, 1835 MDA 2011, T.B. challenges the trial court's denial of his motion to strike the results of the assessment. In that motion, T.B. demanded that the report be stricken because it was prepared in partial reliance upon the use of confidential mental health records and his communications with mental health providers, and he requested that a new assessment be prepared without the use of any privileged information. On December 1, 2011, the Commonwealth filed a motion to quash the appeal as interlocutory. On September 24, 2012, the Commonwealth filed another motion to either quash this appeal as moot or to consolidate it with a subsequent appeal filed by the juvenile in this matter at docket number 534 MDA 2012. In that subsequent appeal, T.B. challenges the trial court's civil commitment order entered pursuant to 42 Pa.C.S. 6403(3). Upon review, we deny both motions to quash,

* Former Justice specially assigned to the Superior Court.

grant the motion to consolidate, and vacate both the trial court's disposition order of October 19, 2011, and its civil commitment order of March 1, 2012.

The history and procedural posture of this case are inextricably entwined. On July 2, 2004, at lower court docket number 54–JV–0001904–2004, the trial court adjudicated T.B. delinquent based on his commission of acts constituting rape, involuntary deviant sexual intercourse, statutory sexual assault, incest and indecent assault. That same day, the court also adjudicated him delinquent at docket number 54–JV–0001944–2004 for committing actions, which, if committed by an adult, would have been two violations of the offense of indecent assault. As a result, T.B. was committed to Adelphoi Village, where he received mental health treatment but continued to act in a sexually inappropriate manner. As a result, in December 2007, the court committed T.B. to Southwood Psychiatric Hospital. Remedial treatment at that facility also proved ineffective, and T.B. persisted in displaying unacceptable sexual behavior.

As T.B. was born in 1991, he turned twenty years old in 2011. At that time, the Commonwealth successfully sought his assessment by the SOAB pursuant to 42 Pa.C.S. § 6358, assessment of delinquent children by the SOAB, which provides:

> (a) **General rule.**—A child who has been found to be delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest) who is committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and

who remains in such facility upon attaining 20 years of age shall be subject to an assessment by the board.

42 Pa.C.S. § 6358(a).

The SOAB obtained T.B.'s entire court file in this matter through the Schuylkill County Juvenile Probation Department (the "probation department"), as permitted by 42 Pa.C.S. § 6307(a)(6.04) ("All files and records of the court in a proceeding under [the juvenile] chapter are open to inspection only by ... the [SOAB] for use in completing assessments."). The probation department had in its possession mental health records containing communications that T.B. made to mental health professionals during the course of his treatment.

On September 26, 2011, T.B. received the completed assessment of the SOAB, dated August 25, 2011. At that time, he became aware that materials that he believed to be privileged were disseminated by the probation department to the SOAB assessor, Dr. Veronique Valliere, and that she relied upon confidential records in rendering her conclusion that T.B. was a sexually violent predator ("SVP").

On October 6, 2011, T.B. filed a motion to strike the results of the SOAB assessment because it was based, in part, on confidential information. He averred that he was never informed that such information would be turned over to the SOAB and was never given the opportunity to review the data transmitted by the probation department. T.B. also alleged that the record provided to the SOAB "contained confidential communications from a delinquent child to a psychiatrist or licensed psychologist derived from the course of treatment and therefore should have been redacted pursuant to 42 Pa.C.S. § 5944," which pertains to confidential communications to psychiatrists or licensed psychologists. Motion to Strike

Assessment of State Sexual Offenders Assessment Board, 10/6/11, at ¶ 4. T.B. specified that the materials given to the SOAB included "disclosures made by juvenile during the treatment process," *id.* at ¶ 5, and sought redaction of a twenty-five-page list of disclosures he had made to a psychiatrist or psychologist in the course of his treatment that Dr. Valliere had used in her SOAB evaluation. As his requested relief, T.B. asked that the August 25, 2011 assessment be stricken and that a determination of whether he was an SVP be deferred until an assessor evaluated whether T.B. was an SVP without consideration of confidential materials. On October 19, 2011, the trial court denied the requested relief, and T.B. appealed.

On December 1, 2011, the Commonwealth filed a motion to quash the appeal as interlocutory. That motion was granted on April 12, 2012; however, our Supreme Court granted allowance of appeal, vacated the order quashing the appeal, and remanded to this Court for us "to reconsider the matter in light of [its] decision in *Commonwealth v. Harris*, 612 Pa. 576, 32 A.3d 243 (2011)." Order of Supreme Court, 8/21/12, at 1.

As that appeal was progressing through the judicial system, the proceedings against T.B. continued. T.B. unsuccessfully attempted to have the SVP hearing delayed. The record establishes that the SOAB assessor, Dr. Valliere, did rely upon Appellant's mental health treatment records in rendering her conclusion that Appellant was a sexually violent predator. N.T., 1/6/12, at 11. Specifically, she reviewed "records from a first treatment program from Adelphoi Village and then records from [Appellant's] current treatment program, Southwood Residential." *Id.* at 15. At the SVP hearing, Dr. Valliere revealed statements that T.B. made during the course of his treatment for mental health problems. *Id.* at 15–16, 23.

After the SVP hearing, the trial court determined that T.B. was an SVP and initiated civil commitment proceedings pursuant to 42 Pa.C.S. § 6403(a) and (b).[1] Another hearing was conducted, and, on March 1, 2012, T.B. was civilly committed

1. That provision relates to court-ordered involuntary treatment and states:

   (a) **Persons subject to involuntary treatment.**—A person may be subject to court-ordered commitment for involuntary treatment under this chapter if the person:
   (1) Has been adjudicated delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S.A. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest).
   (2) Has been committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and remains in the institution or other facility upon attaining 20 years of age.
   (3) Is in need of involuntary treatment due to a mental abnormality or personali-

   ty disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.
   (b) **Procedures for initiating court-ordered involuntary commitment.**—
   (1) Where, pursuant to the provisions of section 6358(f) (relating to assessment of delinquent children by the State Sexual Offenders Assessment Board), the court determines that a *prima facie* case has been presented that the child is in need of involuntary treatment under the provisions of this chapter, the court shall order that a petition be filed by the county solicitor or a designee before the court having jurisdiction of the person pursuant to Chapter 63 (relating to juvenile matters).
   42 Pa.C.S. § 6403(a) and (b). That section also outlines the contents of a petition for involuntary treatment and a procedure for conducting a hearing on the matter.

to Torrance State Hospital. He filed an appeal docketed at 534 MDA 2012 from the commitment order. In that appeal, he again contests the use of confidential mental health records in connection with the SOAB assessment, at the SVP hearing, and for purposes of determining whether he should be committed under the dictates of § 6403.

■ As noted, the appeal at 1835 MDA 2011 is presently on remand from our Supreme Court so we can reconsider, in light of *Harris, supra,* whether the Commonwealth's December 1, 2011 motion to quash this appeal as interlocutory should be granted. Since the April 12, 2012 order granting the December 1, 2011 motion to quash was vacated, that motion remains unresolved. A motions panel of this Court deferred both motions for disposition by the merits panel. Accordingly, we resolve both motions prior to our consideration of the merits of T.B.'s claims of error.

In response to the motion to quash, T.B. maintains that the appeal at 1835 MDA 2011 is properly before us as it arises from a collateral order. As noted, T.B. contended before the trial court that Dr. Valliere considered confidential information that was improperly disseminated to her,[2] that the August 25, 2011 assessment should be stricken, and that a new assessment without use of the confidential material should be prepared. He asserts that the order in question permitting the use of allegedly confidential material in a judicial proceed-

ing falls within the parameters of the collateral order rule, Pa.R.A.P. 313.

■ Our case law uniformly provides that if an appellant argues that an interlocutory order permitted the dissemination of information that is subject to a privilege, then the order is appealable as a collateral order. *E.g. Commonwealth v. Harris,* 612 Pa. 576, 32 A.3d 243, 249 (2011) ("an order overruling a claim of privilege" is immediately appealable); *M.M. v. L.M.,* 2012 PA Super 195, 55 A.3d 1167, 1168 (Pa.Super.2012) (order requiring party to disclose ostensibly confidential mental health information was collateral order appealable under Pa.R.A.P. 313). Therefore, the December 1, 2011 motion to quash this appeal as interlocutory will be denied.

■ After the appeal at 1835 MDA 2011 was remanded by our Supreme Court, the Commonwealth filed, on September 12, 2012, an additional motion to quash or to consolidate the appeal with that of 534 MDA 2012. In the September 12, 2012 document, the Commonwealth's position is that the appeal at 1835 MDA 2011 is moot because the underlying matter has proceeded to final resolution.[3] It contends that the issue raised is moot because the SVP hearing and civil commitment hearing were concluded, a final order was entered in the proceedings, and T.B. filed the appeal at 534 MDA 2012 involving the same question as that raised in 1835 MDA 2011.

■ A case will not be considered moot where an issue of public importance is

---

**2.** Specifically, the Mental Health Procedures Act at 50 P.S. § 7111(a) and the Judicial Code at 42 Pa.C.S. § 5944 delineate the protections implicated in this matter. Section § 5944 relates to confidential communications with psychiatrists or psychologists that were made in the course of treatment, while § 7111(a) is broader and applies to all documents regarding mental health treatment. *See Gates v. Gates,* 967 A.2d 1024 (Pa.Super.2009).

**3.** The Commonwealth does not raise any allegation that the order was not immediately appealable and, in its motion, maintains that the issue of whether the order is appealable under *Harris* is moot because the proceedings were concluded. Commonwealth's Application and Motion, 9/24/12, at ¶ 14.

involved and where the issue is capable of repetition and evading review. This exception to the mootness doctrine was examined in *In re Petition to Compel Cooperation with Child Abuse Investigation*, 875 A.2d 365 (Pa.Super.2005). In that case, the parents of a child were compelled by the trial court to cooperate with the county children and youth services organization for the completion of a home visit of their residence after that organization received a complaint that parents had committed child neglect. Parents argued on appeal that the order was entered without probable cause and violated their constitutional right to be free from unreasonable searches and seizures. By the time the merits of the appeal were considered, the home visit had occurred and the investigation concluded with a finding that the allegation of child abuse was unfounded.

Parents asserted that the issue was not moot because it involved a matter of public importance, that is, whether social workers must abide by the dictates of the constitutional protection against unreasonable searches and seizures when their investigations include a nonconsensual entry into a private residence. Parents also posited that the issue was capable of occurring again and evading review. This Court agreed and noted that an established exception to the mootness doctrine existed where an issue of public importance is "capable of repetition, yet likely to continually evade appellate review." *Id.* at 370.

Therein, this Court determined that the issue was capable of repetition, yet evading appellate review since the county organization's guidelines required it to conduct a home visit during the course of an investigation and a statutory provision permitted the county agency to obtain an order to compel if the parents refused to cooperate.

In this matter, the circumstances are equally capable of repetition and, due to the inclusion of mental health records in the juvenile court file as a matter of course, rather than by leave of court, will evade review on an ongoing basis. Herein, the probation department, as a matter of course, disseminated all of its records to the SOAB pursuant to 42 Pa.C.S. § 6307(a)(6.04). The records included purportedly confidential communications made by T.B. during the course of mental health treatment. Matters of privilege in this setting are of extraordinary public importance as patients, in order to receive effective medical care, must be free to communicate with their mental health providers without fear of public disclosure of that information. *See Harris, supra.* The question of whether this material should have been redacted from the record forwarded to the SOAB can readily arise again in any future juvenile proceeding where a juvenile has received mental health treatment during the delinquency proceedings. As in this case, a court could refuse to order a new assessment without the use of the confidential materials. If T.B. had not been adjudicated an SVP and civilly committed, this issue would again be capable of evading review. Furthermore, the issue is not moot as it has not been addressed by this Court, and the appeal at 534 MDA 2012 is not resolved. Accordingly, we shall deny the petition to dismiss this appeal as moot.

■ Nevertheless, the Commonwealth is correct that the issue at 1835 MDA 2011 is duplicative to that in 534 MDA 2012, which warrants consolidation. Our review of Superior Court records establishes that the appeal at 534 MDA 2012 involves the identical issue and the request for relief. Moreover, that appeal has been fully briefed and is ready for submission. In his brief, T.B. maintained that privileged materials were improperly used during the SVP and concomitant civil commitment

proceeding and that a new proceeding must be conducted without the use of those resources. The Commonwealth did not seek quashal, did not argue that the issue was moot, and addressed the merits of T.B.'s contention. Consolidation would preserve judicial resources, prevent inconsistent decisions, and avoid duplicate briefing. *See* Pa.R.A.P. 513. Hence, it is appropriate.

■ Accordingly, we now consider the merits of the issues presented in both appeals, which T.B. encapsulates as follows in his Statements of the Questions Involved:

Whether statements made by a juvenile to his psychiatrists and psychologists in the course of his treatment are protected by 42 Pa.C.S. § 5944 from being disclosed without the juvenile's permission to members of the State Sexual Offender's Assessment Board for the purposes of the evaluation and report pursuant to 42 Pa.C.S. § 6358, which privilege can only be waived in writing by the juvenile patient?

Brief for Appellant at 7 (534 MDA 2012); Brief for Appellant at 4 (1835 MDA 2011).

Our review of T.B.'s claim is circumscribed by the language of the applicable statutes which, when considered together, determine the extent to which the psychotherapist-patient privilege, *see* 42 Pa.C.S. § 5944, may limit disclosure of mental health records to the SOAB, *see* 42 Pa.C.S. § 6358. As the ambit of the competing acts poses a question of statutory interpretation, our scope of review is plenary and our standard of review, *de novo*. *See Commonwealth v. Gerald*, 47 A.3d 858, 859 (Pa.Super.2012).

In support of his claim, T.B. asserts that over 2000 pages of treatment notes, which included confidential and privileged statements he made to treating psychiatrists and psychologists, were unlawfully released to the SOAB, without notice or a hearing. Brief for Appellant at 14–15 (534 MDA 2012) (citing *Commonwealth v. Carter*, 821 A.2d 601, 609 (Pa.Super.2003)); Brief for Appellant at 14–15 (1835 MDA 2011) (citing *Carter, supra*). T.B. argues further that because the documents were provided to the SOAB as a matter of course as part of his juvenile court file, he was not afforded an opportunity to raise the psychotherapist-patient privilege as a defense against disclosure or to seek redress in the form of redaction. *Id.* at 18–19 ("Counsel . . . did not know what records were received by juvenile probation, when records were received or what records were sent to the [SOAB] until after the receipt of the written assessment by the SOAB. T.B. could not object to something which was not known to exist."). Moreover, T.B. contends, even had notice been provided, the disclosure of privileged materials would have remained unlawful, as Judicial Code section 5944 allows disclosure only with the written consent of the patient whose statements are at issue. *Id.* at 17 ("The information shared had never, to T.B.'s or his attorney's knowledge been shared, or even existed. This is a statute under the privileged witnesses section of judiciary and judicial procedure and cannot and has not been waived by anyone other than the patient.").

The Commonwealth, represented by the Schuylkill County Solicitor's Office, argues to the contrary that T.B.'s treatment notes were properly released pursuant to Judicial Code section 6358 (Act 21), as that statute allows the SOAB full access to the juvenile court file and does not provide for redaction of privileged information. Brief for Appellee at 4. The Commonwealth contends, in addition, that to the extent our decision in *Carter* provides to the contrary, it is superseded by Act 21, which became effective some four months after *Carter*'s

publication. *Id.* Finally, the Commonwealth argues that Act 21 is materially distinguishable from the provisions of Megan's Law at issue in *Carter*, inasmuch as Act 21 "is not punitive in nature, but is rather a civil commitment statute designed to give juveniles with problems controlling their sexually violent behavior a way of receiving treatment designed 'for their own benefit and for the protection of the public.'" Brief for Appellee at 5 (quoting *In re K.A.P.*, 916 A.2d 1152, 1162 (Pa.Super.2007)).

Our analysis commences with the applicable statutory language. Act 21, pursuant to which the SOAB acted in obtaining the contents of the juvenile court file, provides for the Board's assessment of minors found delinquent for various sexually violent offenses prior to the minors' twentieth birthday. Act 21 reads, in its entirety, as follows:

### § 6358. Assessment of delinquent children by the State Sexual Offenders Assessment Board

(a) **General rule.**—A child who has been found to be delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest) who is committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and who remains in any such institution or facility as a result of that adjudication of delinquency upon attaining 20 years of age shall be subject to an assessment by the board.

(b) **Duty of probation officer.**—Ninety days prior to the 20th birthday of the child, the probation officer shall have the duty to notify the board of the status of the delinquent child and the institution or other facility where the child is presently committed. The probation officer shall assist the board in obtaining access to the child and any information required by the board to perform the assessment, including, but not limited to, the child's official court record and complete juvenile probation file.

(b.1) **Notification to board.**—The probation officer shall, within five days of the effective date of this subsection, notify the board of any child whose age precludes compliance with subsection (b) provided the child has not yet attained 21 years of age.

(c) **Assessment.**—The board shall conduct an assessment, which shall include the board's determination of whether or not the child is in need of commitment for involuntary treatment due to a mental abnormality as defined in section 6402 (relating to definitions) or a personality disorder, either of which results in serious difficulty in controlling sexually violent behavior. Upon the completion of the assessment pursuant to this section, the board shall provide the assessment to the court. In no case shall the board file the assessment later than 90 days after the child's 20th birthday unless notification of the board was delayed under subsection (b.1), in which case the assessment shall be filed no later than 180 days after the child's 20th birthday.

(d) **Duty of court.**—The court shall provide a copy of the assessment by the board to the probation officer, the district attorney, county solicitor or designee and the child's attorney.

(e) **Dispositional review hearing.**—Where the board has concluded that the child is in need of involuntary treatment pursuant to the provisions of Chapter 64

(relating to court-ordered involuntary treatment of certain sexually violent persons), the court shall conduct a hearing at which the county solicitor or a designee, the probation officer and the child's attorney are present. The court shall consider the assessment, treatment information and any other relevant information regarding the delinquent child at the dispositional review hearing pursuant to section 6353 (relating to limitation on and change in place of commitment), which shall be held no later than 180 days before the 21st birthday of the child. Where the submission of the report was delayed pursuant to subsection (c), the dispositional review hearing shall be held no later than 90 days before the 21st birthday of the child.

**(f) Subsequent proceeding.**—If, at the conclusion of the dispositional review hearing required in subsection (e), the court finds there is a prima facie case that the child is in need of involuntary treatment under the provisions of Chapter 64, the court shall direct that the county solicitor or a designee file a petition to initiate proceedings under the provisions of that chapter.

42 Pa.C.S. § 6358.

As its language indicates, Act 21 imposes a duty on the SOAB to assess juveniles committed for involuntary mental health treatment within ninety days of the juvenile's twentieth birthday to discern his need for continuing treatment for the condition underlying his sexually violent conduct. *See id.* at § 6858(c) ("The board shall conduct an assessment, which shall include the board's determination of whether or not the child is in need of commitment for involuntary treatment due to a mental abnormality as defined in section 6402 (relating to definitions) or a personality disorder, either of which results in serious difficulty in controlling sexually vi-

olent behavior."). To facilitate that assessment, the supervising probation officer "shall assist the board in obtaining access to the child and any information required by the board to perform the assessment, including, but not limited to, the child's official court record and complete juvenile probation file." *Id.* at § 6358(b). Significantly, however, the statute does not address the extent to which records provided to the SOAB may be redacted or otherwise curtailed in response to evidentiary privileges like the psychotherapist-patient privilege at issue here.

Similarly, section 5944 of the Judicial Code, which enacts the privilege, offers no template to harmonize its prohibition on the release of statements made by an individual during the course of mental health treatment, under the auspices of which statements made in this case were released to the SOAB. In *Carter*, we addressed the extent to which the privilege foreclosed production of statements to the SOAB made by a juvenile adjudicated delinquent for sexually violent offenses during related mental health treatment. *See Carter*, 821 A.2d at 606–08. Unlike the case before us, the evaluation in that case derived from the mandate of the Registration of Sexual Offenders Act, *see* 42 Pa. C.S. § 9795.4, to determine whether the defendant was a sexually violent predator (SVP). As the defendant had pled guilty to sexually violent offenses as an adult, the SOAB sought the contents of his juvenile court file to assist in its evaluation, *see Carter*, 821 A.2d at 603. Over the defendant's objection, the trial court had determined that the mandate of confidentiality under *the Juvenile Act* did not preclude production of the requested records for use by the SOAB. *See id.* On review, we agreed, reasoning that inasmuch as the Juvenile Act and the Registration of Sexual Offenders Act "[b]oth operate to protect the public without punishing the offender,"

interpretation of the Juvenile Act to foreclose production of the requested statements could only hamper the Board in its assessment, ostensibly undermining the objective of both acts. *Id.* at 607. We concluded accordingly that,

> even without leave of court, the Board may inspect juvenile *psychiatric evaluations and summaries* in order to further the goals of the Registration of Sexual Offenders Act and, in particular to aid the Board in considering any mental illness, disability or abnormality, and behavioral characteristics possessed by an offender.

*Id.* (emphasis added). *Nevertheless,* we also concluded that the interplay of the former two acts *was not dispositive* of whether disclosures made by the appellant to a psychiatrist or psychologist while under treatment in the juvenile system remained privileged such as to prohibit their release to the SOAB. *See id.* at 609 ("[W]e must ... determine whether the disclosures made by Appellant to psychiatrists during his juvenile detention are privileged. In doing so, it is necessary to determine to what extent the disclosures were made during the treatment process."). Finding *the purpose for which the disclosures were made* controlling of their privileged nature, we remanded the case to the trial court, for further factfinding on that issue. In that regard, we concluded specifically that "if the evaluations occurred during Appellant's rehabilitation treatment, and Appellant was not informed of his rights against self-incrimination and was not represented by counsel, then the disclosures were not properly available for consideration by the trial court in determining whether Appellant is a sexually violent predator." *Id.* Thus, our holding in *Carter* strongly suggests that notwithstanding the salutary objectives ostensibly served by evaluation of a juvenile's sexually violent conduct for purposes of his further treatment as an SVP, the psychotherapist-patient privilege remains intact and precludes the Board's access to privileged statements.

Predictably, the Commonwealth attempts to distinguish *Carter,* first based on the putative differences between the purposes of the Board's respective evaluations under Megans Law and Act 21. In addition, the Commonwealth posits that Act 21, having become effective after the publication of our decision in *Carter,* necessarily supersedes it—along with the pre-eminence of the psychotherapist-patient privilege it so clearly upholds. We find neither argument persuasive.

The Judicial Code delineates the psychotherapist-patient privilege as follows:

### § 5944. Confidential communications to psychiatrists or licensed psychologists

No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944.

■■ We have applied the language of this provision in numerous prior appeals, and on each occasion have reaffirmed its protections, which derive from "a strong public policy designed to encourage and promote effective treatment and to insulate the client's private thoughts from public disclosure." *Gormley v. Edgar,* 995 A.2d 1197, 1204 (Pa.Super.2010). Consistent with that policy objective, "the pur-

pose of the … privilege is to aid in the effective treatment of the client by encouraging the [client] to disclose information fully and freely without fear of public disclosure." *Id.; see also Commonwealth v. Appleby,* 856 A.2d 191, 199 (Pa.Super.2004). Although our law does not favor evidentiary privileges generally, *see In re Subpoena No. 22,* 709 A.2d 385, 388 (Pa.Super.1998), we recognize that the confidential statements the law protects "are the key to the deepest, most intimate thoughts of an individual seeking solace and treatment," and may not be readily disclosed, *see Gormley,* 995 A.2d at 1204. Thus, consistent with the privilege's salutary purpose, "[o]nce the party asserting the privilege shows that the privilege is properly invoked, the burden shifts to the party seeking the disclosure to show that disclosure of the information will not violate the accorded privilege." *In re Subpoena No. 22,* 709 A.2d at 388.

■■■ On its face, the language of the statute precludes release of statements in the context of a psychotherapist-patient relationship, *notwithstanding whether the proceeding for which they are sought is criminal or civil.* In the absence of any ambiguity in that language, we can discern no basis for the Commonwealth's suggestion that the non-punitive purpose of Act 21 is relevant to our consideration. Regardless of the purpose for which the client's statements to a psychiatrist or psychologist are sought, they remain privileged and are not subject to release without the client's written consent. To be clear, *it is not the purpose for which statements are sought that defines their privileged nature, but rather the purpose and circumstances under which the declarant made them.* Consequently, statements of a juvenile made to a mental health professional while in treatment remain privileged

and may be released to the SOAB only with the juvenile's written consent.

■■■ Moreover, we find no merit in the Commonwealth's assertion that the effective date of Act 21 establishes its primacy over either our decision in *Carter* or the statutory language of Judicial Code section 5944. Neither section 5944 nor the protection it provides are contemplated in the text of Act 21; indeed, Act 21 makes no reference to any evidentiary privilege and offers no suggestion of how record requests by the SOAB should be treated in view of the privilege. Nevertheless, pronouncements of the legislature are made with full knowledge of pre-existing decisional law and are subject to its effect in the absence of a statutory construction that, by its terms, negates the prior decision. *See Commonwealth v. Willson Products, Inc.,* 412 Pa. 78, 194 A.2d 162, 167 (1963) (noting that the failure of the legislature, subsequent to a judicial decision interpreting a statute to change the law as interpreted creates a presumption that such an interpretation was in accordance with the intent of the legislature). Thus, contrary to the Commonwealth's assertion that such an omission effectively nullifies the privilege, we reaffirm the conclusion we reached in *Carter* that record access by the SOAB remains subject to the psychotherapist-patient privilege. We discern no reason why our holding in *Carter* should not apply to the disposition we reach today. Accordingly, we vacate the order of the trial court and remand this matter for a hearing and findings of fact to determine whether the statements, evaluations and summaries at issue were completed for treatment purposes. As we directed in that case,

> If the evaluations and summaries were not completed for treatment purposes, then Appellant's disclosures made therein would not be privileged under the

psychiatrist/patient privilege. *Id.* However, if the evaluations occurred during Appellant's rehabilitative treatment, and Appellant was not informed of his rights against self-incrimination and was not represented by counsel, then the disclosures were not properly available for consideration by the trial court in determining whether Appellant is a sexually violent predator.

*Carter,* 821 A.2d at 609. In the event the court determines that the statements, evaluations, and summaries were made for treatment purposes and the juvenile was not represented by counsel and informed of his right against self-incrimination, the court shall vacate the determination of the SOAB and may resubmit the matter for evaluation by the Board without access to the records in question.

Motions to Quash **DENIED.** Motions to Consolidate **GRANTED.** Trial Court Order of October 19, 2011, **VACATED.** Trial Court Order of March 1, 2012, **VACATED.** Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**