J-S40041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.B., <br> A MINOR, | IN THE SUPERIOR COURT OF <br> PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF: T.B., | |
| Appellant | No. No. 141 MDA 2014 |

Appeal from the Order January 8, 2014
In the Court of Common Pleas of Schuylkill County
Juvenile Division at No(s): CP-54-JV-0001904-2004
CP-54-JV-0001944-2004

BEFORE:  BENDER P.J.E., BOWES, AND PANELLA, JJ.

DISSENTING MEMORANDUM BY BOWES, J.:        **FILED SEPTEMBER 15, 2014**

The learned majority correctly recognizes that this Court is required to preliminarily determine whether an order being appealed from provides this Court with jurisdiction.  Accordingly, we may *sua sponte* raise and address whether the order in question is appealable.  However, I respectfully disagree with the majority's conclusion to quash.  In my considered view, the order falls within Pa.R.A.P. 311(6), which authorizes an interlocutory appeal from the grant of a new trial in a civil proceeding or a criminal trial in certain instances.

As noted by the majority, this matter involves a complicated and unusual procedural history. Since the majority has ably detailed that background, I need not repeat it.[1] The following facts are pertinent to my position. T.B. and the Commonwealth agreed to and did proceed to a civil commitment hearing. This civil commitment hearing occurred immediately after the court found a *prima facie* case that T.B. was in need of involuntary treatment at his dispositional review hearing. Both the Commonwealth and T.B. presented expert testimony regarding whether he was in need of continued involuntary commitment. The parties rested, made arguments, and at the conclusion of the civil commitment hearing, the court took the matter under advisement and, pursuant to 42 Pa.C.S. § 6403(c)(6),[2] indicated it would issue a decision in five days.

Rather than resolve the merits of the matter in five days as required by § 6403(c)(6), the court purported to reject the parties' offer to conduct the civil commitment hearing. Despite the fact that the civil commitment hearing had already occurred and the evidence received, the court *sua sponte* directed that a new civil commitment hearing be held, and requested

_____

[1] A detailed history also may be found at ***In re T.B.***, 75 A.3d 485 (Pa.Super. 2013).

[2] The statute reads, in relevant part, "A decision shall be rendered within five days after the conclusion of the hearing." 42 Pa.C.S. § 6403(c)(6).

the presentation of additional evidence. T.B. appealed. Notably, the Commonwealth does not seek to quash.

The majority correctly finds that this order is not a final order. However, without discussion, in a footnote, it summarily states that T.B.'s appeal "does not fall under the confines of Pa.R.A.P. 311[.]" Majority Memorandum, at 8 n.1. I believe that this order implicates Rule 311(6). That rule allows an appeal from "[a]n order in a civil action or proceeding awarding a new trial, or an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge[.]" Pa.R.A.P. 311(6). Specifically, it is my view that the term "trial" in Rule 311(6) encompasses civil commitment hearings.

A civil commitment hearing requires that the individual whom the Commonwealth is seeking to commit receive notice of the hearing and a copy of the petition for involuntary commitment. 42 Pa.C.S. § 6403(b)(3). The person is entitled to counsel, 42 Pa.C.S. § 6403(b)(3), including the effective assistance of counsel. *See In re Hutchinson*, 454 A.2d 1008 (Pa. 1982). If the individual cannot afford an attorney, the court appoints a lawyer. 42 Pa.C.S. § 6403(b)(3). The person has the right to an independent expert in the area of sexually violent behavior, and the court must provide reasonable fees to secure such an expert if the individual cannot afford one. 42 Pa.C.S. § 6403(b)(4).

- 3 -

The individual cannot be compelled to testify, 42 Pa.C.S. § 6403(c)(1), and is permitted to present evidence and cross-examine witnesses. 42 Pa.C.S. § 6403(c)(2).  The court acts as a fact-finder and must determine by clear and convincing evidence whether involuntary commitment is warranted.  42 Pa.C.S. § 6403(d).  If the court finds insufficient evidence has been introduced, it must discharge.  *See In re K.A.P.*, 916 A.2d 1152, 1156 n.3 (providing overview of 42 Pa.C.S. § 6403 set forth by the Office of the Attorney General).  The commitment hearing is public and a record is made of the proceeding.  42 Pa.C.S. § 6403(c)(3)(4).  All of these elements, though not dispositive in and of themselves, are traditional aspects of a criminal trial.[3]

I do not mean to suggest that the plain legal definition of "trial" was the intent of the Supreme Court in adopting Rule 311(6).  That definition, which provides that a trial is "a formal judicial examination of evidence and determination of legal claims in an adversary proceeding[,]" Black's Law Dictionary, (7th Ed. 1999), is too broad.  In this respect, I recognize that there are proceedings such as PCRA hearings or pre-trial suppression hearings that meet several of the same requirements outlined above that are not trials.  Of course, a PCRA proceeding differs from a trial in a host of respects.

_____

[3]  I acknowledge that a civil commitment hearing is not a criminal proceeding.

Further, this was not a pre-trial matter, which our Supreme Court has stated, "by definition are distinguishable from the actual trial." ***Commonwealth v. Harmon***, 366 A.2d 895, 897 (Pa. 1976). Neither is this a post-trial proceeding that is seeking to preserve or litigate issues that occurred before or during trial. Rather, a civil commitment hearing is its own autonomous proceeding bearing all of the trappings of a trial.

Accordingly, I would hold that a civil commitment hearing is a civil proceeding that fits within the ambit of the term "trial" in Rule 311(6). ***Cf. Commonwealth ex rel. Finken v. Roop***, 339 A.2d 764, 771 (Pa.Super. 1975) ("involuntary commitment involves the same fundamental liberty that is at stake in criminal proceedings"); ***Id***. at 772-773 ("The serious deprivation of liberty and the unfortunate stigma which follow involuntary commitment render the distinction between 'criminal' and 'civil' proceedings meaningless."). Since this proceeding was the equivalent of a trial, and the court below *sua sponte* directed a new civil commitment hearing be conducted, I must respectfully dissent from the majority's decision to quash this appeal.