J-A26027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.M.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 476 MDA 2017 |

Appeal from the Order Entered March 15, 2017
In the Court of Common Pleas of Cumberland County
Civil Division at No(s):  2017-3322-CV, CP-21-JV-0000206-2014

BEFORE:  BOWES, OLSON and RANSOM, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 18, 2018**

Appellant, J.M.G., appeals from the order entered on March 15, 2017.

We affirm.

This Court has set forth the factual background of this case as follows:

After attempting to choke his adoptive mother (Mother), Appellant, who was over age fourteen, voluntarily admitted himself to Philhaven.  Following treatment at Philhaven, Appellant agreed to a voluntary admission to Bradley Center, a residential treatment facility, on March 15, 2013.

While at Bradley Center, Appellant had family therapy sessions, via telephone, once a week with Mother.  Mother and Appellant had one such session on September 26, 2013.  Either later that day, or the next, Appellant's therapist called Mother and said that Appellant wanted to talk to her.  When Appellant called Mother, he told her he had been inappropriate with his adoptive sister (Sister).  Appellant did not provide any specific details.  Mother, a mandated reporter, called Childline and let them handle it.  Subsequently, because of the call, Children's Services took the case and began an investigation.  In addition, [Children's Resource Center (CRC)] contacted Mother and told her that they needed to interview Sister.

On October 8, 2013, . . . Dauphin County Children and Youth Services contacted Detective Autumn Lupey of the Lower Paxton Township Police Department and notified her about the CRC interview. Detective Lupey observed the interview and heard Sister disclose that Appellant sexually abused her. On November 25, 2013, Detective Lupey filed a written allegation report in Dauphin County. Dauphin County transferred the allegation report to Cumberland County in late December 2013. . . .

On July 6, 2015, the juvenile court adjudicated Appellant delinquent and remanded him [to a secure treatment facility. Appellant appealed and this Court affirmed.]

*In the Interest of J.M.G.*, 154 A.3d 852, 2016 WL 4919866, *1–2 (Pa. Super. 2016) (unpublished memorandum) (footnotes, internal quotation marks, and citations omitted).

The procedural history of this case is as follows. Following his adjudication of delinquency, Appellant was placed in a secure, residential treatment facility and later transferred to a second secure, residential treatment facility. On May 19, 2016, the trial court issued notice that, pursuant to Act 21 of 2003, 42 Pa.C.S.A. §§ 6401-6409,[1] the Sexual Offender Assessment Board (SOAB) would evaluate Appellant. The Juvenile Probation

---

[1] Act 21

establishes rights and procedures for the civil commitment of sexually violent delinquent children who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons.

42 Pa.C.S.A. § 6401.

Office sent counsel for both parties a copy of the records it proposed submitting to the SOAB for its review. Appellant's counsel requested more time to review the documents and the trial court granted that request.

On July 13, 2016, Appellant moved to redact portions of the records that the Juvenile Probation Office proposed sending to the SOAB. On July 18, 2016, the trial court denied the motion and sent the SOAB the documents as prepared by the Juvenile Probation Office. On December 19, 2016, a hearing was held to determine if a *prima facie* case existed to begin civil commitment proceedings. On January 27, 2017, the trial court found that a *prima facie* case existed. Thereafter, the Cumberland County Solicitor's designee filed a petition seeking to involuntarily commit Appellant under Act 21.

On March 13, 2017, a civil commitment hearing was held. After the hearing, the trial court issued an order civilly committing Appellant effective March 14, 2017.[2] Appellant filed a timely notice of appeal and the Commonwealth filed a timely cross-appeal.[3] This Court *sua sponte*

---

[2] The order was entered on the docket on March 15, 2017.

[3] On March 21, 2017, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On April 5, 2017, Appellant filed his concise statement. On May 30, 2017, the trial court issued its Rule 1925(a) opinion. Appellant included the three issues he raises on appeal in his concise statement. Contrary to the trial court and Commonwealth's assertions, Appellant's concise statement was not so vague as to waive his allegations of error.

consolidated the two appeals. Thereafter, the Commonwealth discontinued its cross-appeal. The case is now ripe for disposition.

Appellant presents three issues for our review:

1. Did the trial court err in determining that [Appellant] met the criteria for Act 21 potential lifetime [commitment] when other less restrictive alternatives were available?

2. Did the trial court fail to properly redact the records sent to the SOAB pursuant to [this] Court's decision *In the Interest of T.B.*[, 75 A.3d 485 (Pa. Super. 2013)]?

3. Did the trial court err in failing to provide copies of redacted documents to counsel [before] the court denied counsel's motion for redaction and thereafter sent records to the SOAB without counsel[ having an] opportunity to review any records redacted by the court?

Appellant's Brief at 6 (complete capitalization omitted).[4]

In his first issue, Appellant argues that there was insufficient evidence for the trial court to subject him to involuntarily commitment under Act 21. As with all sufficiency challenges, our standard of review is *de novo* and our scope of review is plenary. *Cf. Commonwealth v. Baker*, 24 A.3d 1006, 1033 (Pa. Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013) (citation omitted) (we review *de novo* a trial court determination that an individual convicted of a sexually violent offense has a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses). We must view the evidence in the light most favorable to the Commonwealth as the trial court is free to believe all, part, or none of the evidence presented.

---

[4] We have re-numbered the issues for ease of disposition.

*Cf. Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1199 (Pa. 2015) (citation omitted) (evidence viewed in this manner when assessing trial court determination that individual convicted of sexually violent offense has mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses). "In reviewing a sufficiency claim, we consider the entirety of the evidence introduced, including improperly admitted evidence." *Commonwealth v. Ford*, 141 A.3d 547, 552 (Pa. Super. 2016), *appeal denied*, 164 A.3d 483 (Pa. 2016).

Under Act 21, the trial court may involuntary commit an individual who

(1) Has been adjudicated delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S.[A.] §[§] 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault)[,] or 4302 (relating to incest).

(2) Has been committed to an institution or other facility pursuant to [42 Pa.C.S.A. §] 6352 (relating to disposition of delinquent child) and remains in any such institution or facility upon attaining 20 years of age as a result of having been adjudicated delinquent for the act of sexual violence.

(3) Is in need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.

42 Pa.C.S.A. § 6403(a). The trial court must make the requisite finding under subsection 6403(a)(3) by clear and convincing evidence.[5] 42 Pa.C.S.A. § 6403(d).

Here, there is no dispute on subsections 6403(a)(1) and (a)(2). Appellant was adjudicated for an act of sexual violence which, if committed by an adult, would be a violation of 18 Pa.C.S.A. § 3126. Moreover, because of that adjudication, Appellant was committed to a facility pursuant to 42 Pa.C.S.A. § 6352 and remained in that facility when he turned 20 years old. Hence, we will focus on the sufficiency of the evidence introduced to establish the requirements of subsection 6403(a)(3).

Appellant argues that his expert witness, Dr. Robert Foley, testified that involuntary commitment under Act 21 was unnecessary to protect the public.[6] Although we acknowledge this testimony, there was competent evidence for the trial court to find that Act 21 involuntary commitment was necessary to protect the public. Dr. Robert Stein, an experienced member of the SOAB, testified that "given [Appellant's] history and his behavioral difficulty in secure placement, there is sufficient evidence for serious difficulty in controlling sexually dangerous behavior." N.T. 3/13/17, at 15. Dr. Stein also testified

---

[5] The trial court may have been under the mistaken belief that the Commonwealth had to prove this beyond a reasonable doubt. **See** Trial Court Opinion, 5/30/17, at 12 & n.32 (citation omitted).

[6] To the extent Appellant makes a constitutional challenge in the argument section of his brief, that argument is waived. **See** Pa.R.A.P. 2116(a).

that Appellant could not "advance to a point where [he] can go into a stepdown or a community based program[]" because he was unable to "demonstrate behavioral stability in a secure setting." *Id.* Dr. Stein opined that in order for Appellant "to progress forward . . . . he would need to stay in a secure placement [facility] and receiv[e] programming that would allow him to move toward a less secure placement." *Id.* In other words, if Appellant "were released to the community he would engage in acts of sexual violence." *Id.* at 18. The only reasonable inference from Dr. Stein's testimony is that no safe, less restrictive alternatives were available to the trial court.

Dr. Stein's expert opinion is well-supported by the record. Throughout his time in treatment, Appellant continued to act aggressively and violently. He escaped several times and staff resorted to physical restraints. He displayed inappropriate sexual behavior and refused to show remorse for the harm done to Sister. The reports from his treatment teams show little, if any, progress toward de-escalating the threat he posed to the community.

As noted above, the trial court is free to believe all, part, or none of the evidence presented. In this case, the trial court credited Dr. Stein's well-supported expert opinion. We may not overturn this credibility determination. *See Criswell v. King*, 834 A.2d 505, 513 (Pa. 2003) (citation omitted). For these reasons, we conclude that there was sufficient evidence for the trial court to find, by clear and convincing evidence, that Appellant "[i]s in need of involuntary treatment due to a mental abnormality or personality disorder

which results in serious difficulty in controlling sexually violent behavior that makes [him] likely to engage in an act of sexual violence." 42 Pa.C.S.A. § 6403(a).

Having determined that there was sufficient evidence to involuntarily commit Appellant, we turn to Appellant's assignments of error that would entitle him to a new commitment hearing. In his second issue, Appellant argues that the trial court erred in denying his motion for more redactions of the documents prepared by the Juvenile Probation Office. The trial court and the Commonwealth argue that Appellant waived this issue by failing to comply with the trial court's June 21, 2016 order granting Appellant more time to review the documents. The trial court and Commonwealth note that the June 21, 2016 order required Appellant to request redaction of specific documents, or pages of specific documents. They argue that Appellant's July 13, 2016 motion for more redaction failed to cite with specificity the additional documents he sought to redact. We disagree. Appellant's motion for more redaction specifically requested that the trial court redact the "psychiatric evaluation dated April 7, 2015 by Dr. Rocco Manfredi[.]" Motion for Redaction, 7/13/16, at 2. It would be nearly impossible for Appellant to be more specific about a redaction request. Thus, we conclude that Appellant preserved this claim for our review.

Having determined that Appellant preserved his second assignment of error, we turn to the merits of that issue. In *T.B.*, this Court considered the

interaction of the psychotherapist-patient privilege found at 42 Pa.C.S.A. § 5944 with Act 21. This Court held that Act 21 provided no exception to the psychotherapist-patient privilege. **See T.B.**, 75 A.3d at 492-497. Because of that determination, this Court held that, before forwarding documents to the SOAB for an evaluation under Act 21, a trial court must redact all "statements, evaluations, and summaries [] made for treatment purposes" if "the juvenile was not represented by counsel and informed of his right against self-incrimination." **Id.** at 497.

The trial court did not redact the April 7, 2015 psychiatric evaluation. Dr. Stein of the SOAB received the evaluation as his expert report contained a 14-line summary of it. **See** Commonwealth's Exhibit 1, at 5. The trial court's failure to redact this evaluation was contrary to this Court's decision in **T.B.** Hence, we conclude that the trial court violated Appellant's psychotherapist-patient privilege.

Having determined that the trial court erred by failing to redact certain documents before forwarding them to the SOAB, we turn to whether that error was harmless. We acknowledge that this Court conducted no harmless error analysis in **T.B.** Nonetheless, this Court's jurisprudence suggests that, when evidence is improperly admitted in violation of the psychotherapist-patient privilege, harmless error analysis is appropriate. **See Commonwealth v. Flynn**, 460 A.2d 816, 823 (Pa. Super. 1983) (citation omitted). "An error is harmless if it could not have contributed to the [decision], or stated

conversely, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the [decision]." ***Commonwealth v. Yocolano***, 169 A.3d 47, 53 (Pa. Super. 2017).

Dr. Foley, Appellant's own expert, conceded that Appellant would be likely to commit sexually violent behavior if he were released into society. ***See*** N.T. 3/13/17, at 56 (stating that he "agree[s] with Dr. Stein's opinion about [Appellant's] mental abnormality" and that if released into the community Appellant "would be likely to commit any number of aggressive acts" including acts of sexual violence). Dr. Foley, however, disagreed with Dr. Stein's assessment that Act 21 commitment was necessary to protect the public. According to Dr. Foley, involuntarily committing Appellant pursuant to section 303 of the Mental Health Procedures Act, 50 P.S. § 7303, would be as effective as an Act 21 commitment in protecting the public. ***See id.*** at 50-52. Because a section 303 commitment is less restrictive than an Act 21 commitment, Dr. Foley opined that section 303 was the more appropriate course of action in this case. ***See id.*** In other words, Dr. Foley and Dr. Stein agreed on Appellant's mental disorder and his related propensity toward sexually violent behavior but they differed only on appropriateness of an Act 21 commitment versus a section 303 commitment. The appropriateness of an Act 21 commitment was not addressed in any of the documents improperly forwarded to the SOAB.

Dr. Stein opined that the "treatment supervision, psychiatric supervision, and effort at sex offender treatment, the opportunity to engage in independent living training, the experience [under Act 21] would be vastly superior than what would be available [under section 303.]" *Id.* at 63. This is because the facility to which Appellant would be committed to under section 303 "is very large and does not provide the level of supervision and intensity of treatment that can be found at the much smaller [Act 21 facility], which only has 50 residents." *Id.*; *cf.* 42 Pa.C.S.A. § 6406(a) ("The department shall have the duty to provide a separate, secure State-owned facility or unit utilized solely for the control, care and treatment of persons committed pursuant to [Act 21.]").

Moreover, the documents improperly sent to the SOAB without redaction did not convince Dr. Stein that Appellant had a mental abnormality that would lead to acts of sexual violence if he were released into the community. Although Dr. Stein's expert report detailed Appellant's privileged communications, the conclusions drawn by Dr. Stein were based on information properly disclosed to the SOAB. *See* Commonwealth's Exhibit 1, at 6. Specifically, Dr. Stein relied on Appellant's psychological diagnoses, *e.g.*, bipolar disorder, and his history of impulse control issues when determining that Appellant has a mental abnormality "that would predispose him to sexual offending." *Id.* As for Appellant's difficulty in controlling his sexually dangerous behavior, Dr. Stein relied on the fact that staff at the secure

treatment facility used physical restraints to control Appellant. *Id.* He also relied on Appellant's inability to apply what he learned in group and community settings. *Id.*

Therefore, there are two independent bases to find the error here harmless. First, both experts (Dr. Stein for the Commonwealth and Dr. Foley for Appellant) agreed that Appellant had a mental disorder that made him predisposed to commit violent sexual acts. The only contested issue was suitability of the treatment center, which was not addressed in the materials improperly disclosed to the SOAB. So, no disputed factual determination turned on the improper SOAB disclosure. Second, Dr. Stein's opinions on Appellant's mental abnormalities and his likeliness to commit sexually violent acts if released into the community were not influenced by the documents improperly sent to the SOAB in unredacted form. Accordingly, we conclude that the trial court's error in denying Appellant's motion for more redaction was harmless.

In his third issue, Appellant argues that his right to due process was violated because the trial court sent redacted documents to the SOAB without first notifying his counsel. Appellant argues that he learned of the redactions after the notice of appeal was filed. This argument lacks merit. The Juvenile Probation Office sent a letter to Appellant's counsel on June 14, 2016, reminding counsel of the trial court's order requiring the Juvenile Probation Office to redact some documents. Appellant's counsel even cited this letter in

his motion for an extension of time to seek more redaction. Motion for Extension of Time, 6/20/16, at 1. There is nothing in the record to indicate that the trial court ordered more redactions after Appellant's motion for redaction was denied on July 19, 2016. As such, the trial court did not violate Appellant's due process rights.

In sum, there was sufficient evidence for the trial court to find, by clear and convincing evidence, that Appellant's involuntary commitment under Act 21 was the only way to protect the public. The trial court erred in not redacting some portions of the records sent to the SOAB; however, that error was harmless. As Appellant's due process claim also lacks merit, we affirm the trial court's order subjecting Appellant to civil commitment under Act 21.

Order affirmed.

Judge Ransom joins.

Judge Bowes files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/18