**[J-76-2019] [MO: Mundy, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.G., A MINOR | : | No. 18 MAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: J.M.G. | : | Superior Court dated May 18, 2018, |
| | : | Reconsideration Denied July 26, |
| | : | 2018, at No. 476 MDA 2017, |
| | : | Affirming the Order of the |
| | : | Cumberland County Court of |
| | : | Common Pleas, Juvenile Division, |
| | : | dated March 15, 2017 at Nos. CP- |
| | : | 21-CV-0003322-2017 & CP-21-JV- |
| | : | 0000206-2014. |
| | : | |
| | : | ARGUED:  September 12, 2019 |

**CONCURRING OPINION**

**JUSTICE BAER**                                                    **DECIDED:  April 22, 2020**

The majority creates a *per se* rule that the harmless error doctrine is inapplicable to violations of the Section 5944 psychiatrist/psychologist-patient privilege in cases involving Act 21 juvenile civil commitment proceedings.  I respectfully disagree.  Instead, I would treat the Section 5944 privilege in Act 21 proceedings in the same manner that this privilege is treated in criminal cases, *i.e.*, allow for the application of a harmless error analysis in the appropriate case.  In applying the harmless error doctrine to the facts presented, however, I would hold that the violation of the psychiatrist/psychologist-patient privilege at issue was not harmless.  Accordingly, I concur in the majority's mandate to reverse the judgment of the Superior Court and remand the matter for a new commitment hearing based upon J.M.G.'s properly redacted records.

I begin by expressing my complete agreement with the majority's discussion of the purpose of Section 5944, as well as the policy considerations at stake in a juvenile commitment proceeding under Act 21.[1]  As the majority observes, the Section 5944 privilege "is based upon a strong public policy that confidential communications made by a patient to a psychiatrist or psychologist should be protected from disclosure, absent consent or waiver."  Majority Opinion at 11 (quoting *Commonwealth v. Counterman*, 719 A.2d 284, 295 (Pa. 1998)).  Further, I agree that the policy goals underlying the Section 5944 privilege are "to strengthen and protect the therapeutic relationship between a patient and his or her mental health treatment providers, without which the goals of this Commonwealth's mental health treatment policies could not be achieved."  Majority Opinion at 12.

The majority acknowledges that Act 21 provides "for assessment of juveniles who have been adjudicated delinquent for an act of sexual violence and have been subject to an institutional placement where he or she has remained through his or her 20th birthday."  Majority Opinion at 14; 42 Pa.C.S. § 6358(a).  I concur that a core motivation for Act 21's enactment is to assure continued, necessary mental health treatment to juveniles.  Majority Opinion at 15.  It is beyond cavil that the confidential nature of the juvenile's

---

[1] The privilege is statutorily defined as follows:

> § 5944. Confidential communications to psychiatrists or licensed psychologists.
>
> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944.

communications with his or her mental health professional is the *sine qua non* of effective mental health treatment.

In my view, however, recognition of the critical importance of the confidential nature of communications between a juvenile, who is the subject of an Act 21 commitment proceeding, and his or her psychotherapist does not lead to the conclusion that a violation of the Section 5944 privilege can never be deemed harmless in an Act 21 context or, indeed, in any other context. In concluding to the contrary, the majority reasons that, "[s]imilar to the types of constitutional errors the United States Supreme Court has deemed so basic to a fair trial that application of the harmless error doctrine is inappropriate, we deem scrupulous adherence to the psychotherapist-patient privilege to be basic to fair Act 21 proceedings." Majority Opinion at 18 (citing *Chapman v. Cal.*, 386 U.S. 18, 23 (1967) (holding that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error")).

I respectfully disagree. The High Court in *Chapman* identified some specific constitutional rights that could never be treated as harmless error, including the right to counsel and the right to an impartial judge. *Chapman*, 386 U.S. at 23 n.8 (internal citations omitted). These rights embody the very essence of a fair trial. I do not find the statutory violation of the Section 5944 privilege in an Act 21 commitment proceeding to be akin to the aforementioned constitutional rights. To illustrate, the juvenile, as any mental health patient, discloses a vast amount of information to his or her mental health provider, involving the individual's thoughts, fears, feelings, and actions. All of these communications disclosed during treatment are privileged. *See* 42 Pa.C.S. § 5944 (protecting as privileged "any information acquired in the course of [the psychiatrist's or the psychologist's] professional services in behalf of such client"). Significantly, however, not all of the information disclosed by the juvenile to the mental health professional has

relevance to an Act 21 assessment, which examines whether the juvenile requires further involuntary mental health treatment. *See* 42 Pa.C.S. § 6358(c) (requiring the Sexual Offender Assessment Board to conduct an assessment of whether the juvenile is in need of commitment for involuntary treatment due to an enumerated mental abnormality or a personality disorder, either of which results in serious difficulty in controlling sexually violent behavior).

Accordingly, where the court finds that the violation of the Section 5944 privilege did not prejudice in any way the determination of whether the juvenile is in need of involuntary treatment, I would deem the violation harmless. Such scenario is clearly distinct from a tainted proceeding involving, for example, a lack of counsel or a biased jurist, as the erroneously disclosed information has no bearing on the pertinent legal determination. Thus, I respectfully disagree with the majority that violations of the Section 5944 privilege in an Act 21 setting are *per se* unamenable to a harmless error analysis.

Our intermediate appellate courts have taken a similar approach and have applied the harmless error doctrine in criminal cases involving the Section 5944 privilege. *See Commonwealth v. Fewell,* 654 A.2d 1109, 1117 (Pa. Super. 1994) (holding that a violation of the Section 5944 privilege in a criminal context was harmless error as the psychiatrist's testimony was merely cumulative of other untainted testimony); *Commonwealth v. Flynn*, 460 A.2d 816, 823 (Pa. Super. 1983) (holding that to the extent the trial court erred in admitting a psychiatrist's testimony in violation of the Section 5944 privilege, such error was harmless because the trial court found expressly that the defendant was sane beyond a reasonable doubt, excluding the psychiatrist's testimony). Because it is the relationship between the mental health professional and the patient that is deserving of protection under the Section 5944 privilege, I would hold that the harmless error doctrine

applies to all violations of the Section 5944 privilege, whether they occur in Act 21 proceedings or in criminal matters.[2][3]

As noted, in applying the harmless error doctrine to the facts presented, I would hold that the violation of the psychiatrist/psychologist-patient privilege was not harmless, as I believe that the SOAB assessment was tainted by the consideration of J.M.G.'s privileged communications. The record establishes that the Commonwealth's expert, Robert M. Stein, Ph.D., opined from his review of J.M.G.'s records that J.M.G. satisfied the criteria for civil commitment under Act 21 because he suffered from a mental abnormality rendering it likely that he would commit violent sexual acts if released into the community. Dr. Stein acknowledged that he utilized all of the information that he was provided, including "statements that [J.M.G.] made while in treatment to various mental

---

[2] Additionally, I do not interpret the United States Supreme Court's decision in J*affee v. Redmond*, 518 U.S. 1 (1996), as precluding application of the harmless error doctrine in cases involving the Section 5944 privilege. *See* Majority Opinion at 12 (quoting *Jaffee*, 518 U.S. at 17 (stating that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.")). The High Court's sentiment in this regard was not made in the context of harmless error. Instead, the issue in *Jaffee* was whether the federal psychotherapist privilege applied to confidential communications made to licensed social workers in the course of psychotherapy. In answering this inquiry in the affirmative, the Supreme Court rejected the approach of the circuit court, which held that the privilege only applied to social workers if, "in the interests of justice, the evidentiary need for the disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests." *Jaffee*, 518 U.S. at 7, 17-18. Thus, the Supreme Court in *Jaffee* did not opine on the propriety of a harmless error analysis after the privilege had been violated but, rather, rejected a procedure whereby the privilege would not apply in the first instance, absent a balancing of whether the disclosure outweighed the patient's privacy interests.

[3] I further agree with the Commonwealth that the Superior Court's decision in *In the interest of T.B.*, 75 A.3d 485 (Pa. Super. 2013), does not preclude application of the harmless error doctrine in Act 21 proceedings, as that decision did not directly address such issue. In *T.B.*, the Superior Court remanded to the trial court for a determination of whether, in fact, the privilege had been violated. In this case, the Superior Court concluded that the privilege had been violated; thus, the issue became whether that error was harmless.

health professionals." N.T., 3/13/2017, at 24. In short, Dr. Stein acknowledged that J.M.G.'s statements were made for purposes of treatment, that the information was released to the SOAB without J.M.G.'s consent, and that Dr. Stein relied on such information in forming his opinion. *Id.* I agree with Judge Bowes' dissenting sentiments below that "the consideration of the privileged statements that [J.M.G.] made for the purposes of treatment, including reports of auditory hallucinations and various admissions to sexually deviant behaviors, tainted the [SOAB's] conclusion that involuntary civil commitment was warranted pursuant to 42 Pa.C.S. [§] 6403(a)(3)." *In the Interest of J.M.G.*, 2018 Pa. Super. Unpub. LEXIS 1641, at 26.

It is for these reasons that I concur in the majority's mandate to reverse the judgment of the Superior Court and remand the matter for a new commitment hearing based upon J.M.G.'s properly redacted records.

Justice Todd joins this concurring opinion.