J-S66041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.B., A MINOR | No. 348 MDA 2016 |

Appeal from the Order Entered February 23, 2016
In the Court of Common Pleas of Schuylkill County
Juvenile Division at No(s): CP-54-JV-0001904-2004
CP-54-JV-0001944-2004

BEFORE:  BOWES, J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 15, 2016**

T.B. appeals from an order requiring his involuntary commitment under 42 Pa.C.S. § 6403.  We affirm.

This case has an extensive procedural history.  On July 2, 2004, nine days before T.B. turned 13, the juvenile court adjudicated him delinquent for acts that, had he been an adult, would have constituted rape, statutory sexual assault, involuntary deviate sexual intercourse, indecent assault and incest.[1]  On July 19, 2004, the court adjudicated T.B. delinquent on two additional counts of indecent assault.  All offenses took place shortly before T.B.'s 13th birthday and involved victims aged four, five and seven.  From

_____

[1] 18 Pa.C.S. §§ 3121, 3122.1, 3123, 3126 and 4302, respectively.

July 2004 until December 2007, T.B. was committed to Adelphoi Village. Thereafter, he was committed to Southwood Residential Treatment Facility.

Upon T.B.'s 20th birthday on July 9, 2011, the State Sexual Offenders Assessment Board ("SOAB") was notified of T.B.'s status. In accordance with Act 21 of 2003 ("Act 21"), the SOAB conducted an assessment to determine whether T.B. was in need of commitment for involuntary treatment due to a mental abnormality.[2] There is no dispute that T.B.'s acts of indecent assault constitute "acts of sexual violence" under Act 21[3] that rendered T.B. subject to assessment by the SOAB.

The SOAB obtained T.B.'s entire court file through the Schuylkill County Juvenile Probation Department as permitted by 42 Pa.C.S. § 6307(a). The probation department had in its possession mental health records containing communications that T.B. made to mental health professionals during the course of his treatment at Adelphoi Village and Southwood Psychiatric Hospital. As was his right, T.B. declined to be interviewed. On August 30, 2011, the SOAB concluded that T.B. was in need of involuntary treatment.

---

[2] **See** 42 Pa.C.S. § 6402 (defining "mental abnormality" as "a congenital or acquired condition of a person affecting the person's emotional or volitional capacity").

[3] **See** 42 Pa.C.S. § 6402 (defining "acts of sexual violence" to include, *inter alia*, indecent assault as defined under 18 Pa.C.S. § 3126).

T.B. filed a motion to strike the SOAB's assessment because it had reviewed privileged information in his case file that he had revealed as part of his treatment process. On October 19, 2011, the juvenile court denied T.B.'s motion, and he appealed to this Court at 1835 MDA 2011.

Despite T.B.'s appeal, proceedings against him continued in the juvenile court. On January 6, 2012, the juvenile court found that there was *prima facie* evidence that T.B. needed involuntary treatment. On January 19, 2012, the county solicitor filed a petition for T.B.'s involuntary commitment pursuant to 42 Pa.C.S. § 6403. On March 1, 2012, following a hearing, the juvenile court ordered T.B.'s involuntary commitment. T.B. appealed the commitment order to this Court at 534 MDA 2012.

On April 12, 2012, this Court quashed T.B.'s appeal at 1835 MDA 2011. T.B. petitioned for allowance of appeal. On August 21, 2012, the Supreme Court granted allowance of appeal, vacated this Court's quashal order and remanded the case back to us for reconsideration in light of its decision in **Commonwealth v. Harris**, 32 A.3d 243 (Pa.2011). On September 12, 2012, the county solicitor filed a second motion to quash the appeal at 1835 MDA 2011.

In a published opinion on June 24, 2013, we denied the motions to quash T.B.'s appeals at 1835 MDA 2011; consolidated the appeals at 1835 MDA 2011 and 534 MDA 2012; vacated the October 19, 2011 order denying the motion to strike the SOAB's assessment; and vacated the March 1, 2012

civil commitment order. ***In Re T.B.***, 75 A.3d 485 (Pa.Super.2013). We remanded the case with instructions for the juvenile court to determine whether the material reviewed by the SOAB included privileged information. We instructed:

> In the event the court determines that the statements, evaluations, and summaries were made for treatment purposes and [T.B.] was not represented by counsel and informed of his right against self-incrimination, the court shall vacate the determination of the SOAB and may resubmit the matter for evaluation by the [SOAB] without access to the records in question.

***Id***. at 497.

On remand, the parties agreed that the SOAB had reviewed privileged information about T.B. and agreed on a redacted version of the record for the SOAB to review. The SOAB performed a new assessment based upon the redacted version and again concluded, in a report dated September 23, 2013, that T.B. needed further treatment as of May 2011.

On January 6, 2014, after several continuances necessitated by expert witness and counsel unavailability, the juvenile court held a hearing. Because experts were available and present on that date for both sides, the parties agreed that the court would determine at the end of the Commonwealth's case-in-chief whether it had made a *prima facie* case for involuntary treatment and then, if necessary, proceed to a civil commitment hearing based upon the January 19, 2012 petition for civil commitment.

The Commonwealth's expert, Robert M. Stein, Ph.D., opined from his review of the redacted records that T.B. met the criteria for civil commitment under Act 21 because he suffered from a mental abnormality such that he is likely to commit violent sexual acts if released into the community. Dr. Stein reached this conclusion based on the history of T.B.'s behavior at the time of his arrest and his lack of progress in treatment. His angry outbursts and attempted suicide showed mental instability, and after seven years of treatment in highly supervised settings, he had yet to develop consistent stable behavior. In August 2010, T.B. was found masturbating at a public pool while looking at younger children who were guests there. His treatment records reflected poor participation and a refusal to use learned skills, and despite years in treatment, he has never been deemed ready to move on to a community-based step-down treatment program. The juvenile court determined that the Commonwealth established a *prima facie* case that T.B. had a mental abnormality which made him a candidate for involuntary treatment.

The Commonwealth requested that the juvenile court move forward to a civil commitment hearing, and the court agreed. The Commonwealth offered the same evidence (Dr. Stein's testimony). T.B. presented the expert testimony of Timothy P. Foley, Ph.D., who opined that the available records did not demonstrate that T.B. met the criteria for commitment. Dr. Foley noted that individuals undergo many changes as they pass into

adulthood, and that only one in 25 juvenile sex offenders continue to offend after becoming adults. He added that T.B. had not been diagnosed with a mental disorder characterized by a predisposition to sexual misconduct. At the conclusion of the hearing, the juvenile court took the matter under advisement and said that a decision would be forthcoming.

On January 8, 2014, the juvenile court entered an order finding that there was *prima facie* evidence that T.B. was in need of involuntary treatment. In the same order, the court directed the county solicitor to file a new petition to initiate civil commitment proceedings pursuant to 42 P.S. § 6403. The juvenile court explained:

> This court finds that a *prima facie* case has been made that T.B. was in need of involuntary treatment in 2011; however, we are not prepared to grant a petition for civil commitment without evidence of T.B.'s progress, or lack thereof, over the last two-and-one-half years. The parties felt they were limited to the record of his treatment up to May of 2011, when he was still 20 years old and subject to evaluation under Act 21. Since the instant proceedings are an extension, after remand, of the original evaluation pursuant to Act 21, it may be proper to evaluate a *prima facie* case based on the records as they existed when T.B. was twenty years old, but no reasonable determination of his need for continual involuntary treatment can be made without knowledge of what has happened since in his treatment.
>
> Accordingly, this court must reject the parties' offer to combine the disposition review with a commitment proceeding. We have determined that there is a *prima facie* case that T.B. requires further involuntary treatment. Now a new petition for civil commitment should be filed by the county solicitor and a full hearing be conducted. The parties may decide to incorporate at that hearing the testimony offered in their proceeding, but there can be no complete hearing without evidence of what has transpired since 2011.

Juvenile Court Opinion, 1/8/14, at 4 (emphasis added).

T.B. appealed to this Court. On January 28, 2014, while T.B.'s appeal was pending, the county solicitor filed a new petition for involuntary commitment.

On September 15, 2014, we quashed the appeal because the January 8, 2014 order was non-final.

In mid-2015, T.B. was charged as an adult in Westmoreland County with aggravated assault, simple assault and harassment for attacking a staff officer at his treatment facility. On September 2, 2015, T.B. was transferred from his treatment facility to an adult correctional facility.

On February 22, 2016, seven months after T.B.'s 24th birthday, his case proceeded to a civil commitment hearing based on the January 28, 2014 petition. Dr. Stein again served as the Commonwealth's expert. He testified that he reviewed T.B.'s annual SOAB assessments from 2012, 2013, 2014 and 2015, and these reports did not change his opinion that T.B. should be committed. N.T., 2/22/16, at 5-6. When asked what new information he learned, Dr. Stein answered:

> Well, if we just look at the past year, the reports describe near daily rules violations related to a number of things, including safety concerns, poor boundaries of other individuals, lack of participation in treatment, a failure to accept responsibility with specific behaviors including sleeping and treatment groups, not completing paperwork, getting behaviorally and emotionally defensive in response to feedback, dishonesty with staff, treatment refusal, behaviors that were sexualized in nature as well, [such as] purposefully urinating and ejaculating on himself,

wearing soiled underwear, masturbating with his bedroom door open, refusing meds, and refusing to perform daily hygiene. So looking at that all together, there just was no progress made in treatment. And this is just looking at the past year. But if we look at the previous three years as well, similar behaviors throughout.

*Id*. at 6-7. Dr. Stein added that in 2014,

there were other sorts of behaviors of sexualized aggression … There was a very unusual incident in which he made himself bleed and then dripped the blood into his urine in order to claim he was urinating blood, inserting a deodorant bottle into his rectum, inserting a safety pin into his urethra. These are self-injurious behaviors that have a sexual component to them. And it looks for sexual attention as well.

*Id*. at 8. Moreover, in 2014,

there was an assault in which he bit staff twice on the arm that required medical treatment for the staff. And most recently, July 15th of 2015, there was an assault of a male staff member without provocation. And that resulted in formal charges of aggravated assault, simple assault and harassment. And I believe that is why he is in Westmoreland County Prison today.

*Id*. at 8-9. Based on this evidence, Dr. Stein concluded that if released now, T.B. will engage in sexual offending in the community in the future. *Id*. at 9. "It's been quite sad," Dr. Stein testified. "He's been in placement for 11 years, various forms of placement. And there just has not been any substantial progress." *Id*. at 10.

At the conclusion of the hearing, the court found that T.B. met the requirements for an involuntary commitment under 42 Pa.C.S. § 6403. On February 23, 2016, the court entered a commitment order. T.B. filed a

timely appeal to this Court, and both T.B. and the juvenile court complied with Pa.R.A.P. 1925.

On March 28, 2016, T.B. pled guilty to aggravated assault in the Westmoreland County criminal case and was sentenced to 4-10 years' imprisonment in state prison with credit for time served from September 2, 2015.

T.B. raises the following issues in this appeal, which we re-order for purposes of disposition:

1. Whether the February [23], 2016 [order] is in error because the decision is based upon evidence in the nature of a third assessment performed and filed more than 180 days after T.B.'s 20th birthday and all while detained in Torrance State Hospital?

2. Whether the February [23], 2016 [order] is in error because it exceeded the scope of remand, which remand directed that if redaction was appropriate, 'the court shall vacate the determination of the SOAB and may resubmit the matter for evaluation by the [SOAB] without access to the records in question,' and did not call for additional documentation?

3. Whether the order of the Honorable Judge Baldwin directing the Schuylkill County Solicitor to file a petition for a civil commitment pursuant to 42 P.S. § 6403 should be stricken because it improperly granted a new trial in the nature of a civil commitment hearing *sua sponte*, where there was no error of law and without a request by the parties, against the stipulation of the parties, after a finding made by the judge from the bench during the proceedings of a *prima facie* case and allowing the parties to proceed with and present all of their evidence for the civil commitment hearing?

Brief For Appellant, at 4.

In T.B.'s first argument, he claims that the juvenile court violated the Juvenile Act by ordering his civil commitment on February 22, 2016 based

- 9 -

on SOAB assessments taken more than six months after his 20th birthday (in 2012, 2013, 2014 and 2015). We disagree.

Appellant's argument is one of statutory interpretation. Our Supreme Court has set forth the relevant principles of statutory construction, and our standard of review, as follows:

> Because the present claim raises an issue of statutory construction, this Court's standard of review is plenary. *See Hazleton Area School Dist. v. Zoning Hearing Bd.,* [] 778 A.2d 1205, 1210 (Pa.2001). Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a); *see also Commonwealth v. MacPherson*, [] 752 A.2d 384, 391 (Pa.2000). In pursuing that end, we are mindful that 'when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' 1 Pa.C.S. § 1921(b). Indeed, 'as a general rule, the best indication of legislative intent is the plain language of a statute.' *See Bradley*, 834 A.2d at 1132 (citing *Commonwealth v. Gilmore [Gilmour] Mfg. Co.,* [] 822 A.2d 676, 679 (Pa.2003)). In reading the plain language, 'words and phrases shall be construed according to rules of grammar and according to their common and approved usage,' while any words or phrases that have acquired a 'peculiar and appropriate meaning' must be construed according to that meaning. 1 Pa.C.S. § 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia:* the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c) …
>
> Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, inter alia, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the

- 10 -

legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

*Commonwealth v. Shiffler,* 879 A.2d 185, 189–90 (Pa.2005).

Before addressing whether the juvenile court properly admitted the SOAB assessments in question, we must first determine whether the juvenile court had jurisdiction to proceed under Act 21 in February 2016 even though T.B. was over 21 years old. *Turner Const. v. Plumbers Local 690*, 130 A.3d 47, 63 (Pa.Super.2015) ("we can raise the issue of jurisdiction *sua sponte*").

Act 21 amended the Juvenile Act to include procedures for civil commitments of sexually violent delinquents. We have described Act 21 as follows:

Act 21 amended the Juvenile Act to provide for the assessment and civil commitment of certain sexually violent juveniles. The Act requires that the State Sexual Offenders Assessment Board ('the Board') evaluate specified juveniles before they leave the jurisdiction of the juvenile system. 42 Pa.C.S. §§ 6302, 6358(a). The juveniles to be evaluated are those, (1) who have been found delinquent for an act of sexual violence; (2) who have been committed to an institution or facility pursuant to the Juvenile Act; and, (3) who remained in that facility on their 20th birthdays. 42 Pa.C.S. § 6358(a).

Under the Act, 90 days before the affected juvenile's 20th birthday, the probation officer is required to notify the Board of the juvenile's status. 42 Pa.C.S. § 6358(b). The officer must also assist the Board in obtaining access to the child and any information that the Board requires to perform its assessment. *Id*.

- 11 -

To facilitate the Board's receipt of information, the Act permits the Board to inspect the Juvenile Court's files and records. 42 Pa.C.S. § 6307(6.4). The Act also amended the provisions of Megan's Law regarding Board assessments to require all state, county, and local agencies to provide copies of records and information required by the Board for the assessment of delinquent children. 42 Pa.C.S. § 9753.4(c).

Upon receipt of the necessary information, the Board is charged with determining whether the juvenile is in need of commitment for involuntary treatment due to a mental abnormality or a personality disorder which results in the juvenile having serious difficulty in controlling sexually violent behavior. 42 Pa.C.S. § 6358(c). A mental abnormality is 'a congenital or acquired condition ... affecting the person's emotional or volitional capacity.' 42 Pa.C.S. § 6402.

The Board must provide its assessment to the Court of Common Pleas. 42 Pa.C.S. § 6358(c). The Court, in turn, provides the assessment to the probation officer, the district attorney, the county solicitor or his designee and the juvenile's attorney. 42 Pa.C.S. § 6358(d).

If the Board has decided the juvenile is in need of involuntary treatment, the Court must hold a dispositional review hearing to determine whether there is a *prima facie* case that the juvenile is in need of involuntary treatment. 42 Pa.C.S. § 6358(e), (f). The probation officer, the county solicitor or his designee, and the juvenile's attorney are to be present. 42 Pa.C.S. § 6358(e).

If the Court determines that there is a *prima facie* case, it must direct the county solicitor or his designee to petition the Court to involuntarily commit the juvenile for treatment. 42 Pa.C.S. § 6358(f). The petition must be in writing and in a form adopted by the Department of Public Welfare. 42 Pa.C.S. § 6402(b). It must set forth the facts which constitute reasonable grounds to believe the juvenile meets the criteria for court-ordered involuntary treatment and it must include the Board's assessment. *Id*.

The criteria for commitment are that the juvenile has been adjudicated delinquent for an act of sexual violence, he was committed to an institution or facility for delinquent children, he

was in such institution on his 20th birthday and, he 'is in need of involuntary treatment due to a mental abnormality or personality disorder that results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.' 42 Pa.C.S. § 6403(a).

The juvenile is given a notice of the hearing and a copy of the petition. 42 Pa.C.S. § 6403(a)(3). He is also notified that he has a right to counsel and that if he cannot afford one, counsel will be appointed. In addition, he is informed that he has the right to the assistance of an independent expert in the field of sexually violent behavior and that if he cannot afford such an expert, the Court will provide a reasonable fee to allow him to hire one. 42 Pa.C.S. § 6403(a)(4).

The juvenile may not be compelled to testify at the hearing, but he retains the right to present and cross-examine witnesses. 42 Pa.C.S. § 6403(c). The hearing is public and a record is made. *Id*.

If the Court determines that the juvenile meets the criteria for commitment by clear and convincing evidence, it issues an order committing the juvenile for involuntary treatment at an inpatient facility designated for th[at] purpose by the Department of Public Welfare. 42 Pa.C.S. §§ 6402, 6403(d). The term of the commitment is one year, unless the juvenile petitions the Court for release or the director of the facility determines the juvenile no longer has serious difficulty in controlling sexually violent behavior. 42 Pa.C.S. § 6404(a), (c)(1), (4). If the director makes that determination, he must petition the Court for a hearing. 42 Pa.C.S. § 6404(c)(1).

Notice of the petition is given to the juvenile, his attorney, the Board, the district attorney and the county solicitor or his designee. *Id*. The Board must then conduct a new assessment of the juvenile and provide it to the Court before a hearing is held. 42 Pa.C.S. § 6404(c)(2). The juvenile is entitled to have counsel at the hearing and if he cannot afford one, the Court will appoint counsel. 42 Pa.C.S. § 6404(c)(1).

If the Court determines by clear and convincing evidence that the juvenile 'continues to have serious difficulty controlling sexually violent behavior due to a mental abnormality or personality disorder that makes the person likely to engage in an

- 13 -

act of sexual violence,' the Court continues the commitment. 42 Pa.C.S. § 6404(c)(3). Otherwise, the Court must discharge the juvenile.

In the absence of a petition from the director of the facility or the juvenile, the Court conducts a hearing to review the juvenile's status on an annual basis. 42 Pa.C.S. § 6404(b). For the purposes of that hearing, the director of the facility submits an evaluation of the juvenile and the Board conducts a new assessment addressing whether the juvenile continues to meet the criteria for commitment. The hearing is conducted using the same procedures and evidentiary standards used in the initial commitment proceeding. 42 Pa.C.S. § 6404(b)(1).

*In Re K.A.P.*, 916 A.2d 1152, 1156 n. 3 (Pa.Super.2007).

Act 21's time limitations do not apply when the juvenile takes actions that delay their enforcement. In *K.A.P.,* the appellant was adjudicated delinquent of various sexual and non-sexual acts. At age 19, while in a juvenile facility, he attacked two employees and was charged as an adult with assault-related crimes. He pled guilty to aggravated assault and harassment and was sentenced to a term of imprisonment. He was in state prison on his 20th birthday. Following his 20th birthday, pursuant to notification from the SOAB, the juvenile court held a hearing and found *prima facie* evidence that he was a sexual offender in need of involuntary commitment. The County Solicitor filed a petition for involuntary commitment under Act 21, and the court granted the petition.

The appellant argued that Act 21 could not apply to him because it only applies to offenders who are in a juvenile facility as of their 20th birthday, but he was a state prisoner on that date. This Court disagreed and

- 14 -

held that the appellant was subject to involuntary commitment under Act 21,

reasoning as follows:

> While we agree that the literal language of the statute appears to support Appellant's interpretation, we must bear in mind that the overarching goal of statutory interpretation is to ascertain the intent of the Legislature. Thus, we should not interpret the statute strictly and literally if doing so would create a result that is absurd, unreasonable, or impossible to execute. Moreover, the Legislature intends that all of its provisions shall be 'effective and certain.'
>
> In the instant case, Appellant's interpretation would lead to an absurd and unreasonable result that would defeat the Legislature's intent that all provisions be effective and certain. It is undisputed that if Appellant had **not** assaulted employees of his juvenile facility, he would have remained in that facility on his 20th birthday, rather than in state prison. It is also undisputed that he would have been subject to Chapter 64's provisions.
>
> We fail to see how Appellant's unilateral, intentional and criminal actions should compel a different result, simply because those actions placed him in state prison rather than a juvenile facility. The Legislature obviously could not have expected or intended Chapter 64 to be rendered void by the intentional and criminal actions of the very people that the law is intending to benefit. If we were to adopt Appellant's interpretation, we would do nothing but encourage similarly situated individuals to avoid Chapter 64 by similar means (or by less violent means, such as simply escaping from the facility). Such an interpretation would severely impair the certainty and effectiveness of the statute. Also, such an interpretation would deprive the public of the protections that Chapter 64 provides to potential victims of juvenile sexual offenders.
>
> Thus, we hold that as a matter of statutory interpretation, the literal language of the statute must yield to the overarching intent of the Legislature that Chapter 64 cannot be defeated by Appellant's intentional acts. Appellant's first claim fails.

*Id*. at 1158.

This case is analogous to *K.A.P.* The SOAB performed a timely assessment shortly after T.B.'s 20th birthday to determine whether he was in need of involuntary commitment, and the juvenile court began civil commitment proceedings in a timely manner. Thereafter, however, T.B. delayed final disposition of these proceedings until 2016 by taking three steps: (1) an appeal that took most of 2012 and 2013 to resolve, *see In Re T.B.*, 75 A.3d 485 (Pa.Super.2013); (2) a second appeal in 2014 that this Court quashed; and (3) a criminal assault in 2015 against an employee at his treatment facility. We reasoned in *K.A.P.* that "the Legislature obviously could not have expected or intended Chapter 64 to be rendered void by the intentional and criminal actions of the very people that the law is intending to benefit." This observation applies with equal force to the present case. Although T.B. is now in his mid-twenties, it would be absurd to declare him outside of Act 21's jurisdiction due to delays in his civil commitment proceedings which he caused.[4] Therefore, in February 2016, the juvenile court continued to possess jurisdiction under Act 21 to determine whether T.B. is subject to involuntary commitment.

We also conclude that the juvenile court had the authority to review the annual SOAB assessments taken after T.B.'s 21st birthday when making

_____

[4] *Cf.* Pa.R.Crim.P. 600(c)(2) (under Pennsylvania's speedy trial rule, "periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration").

its commitment determination. Once again, our decision rests upon the precept that the legislature does not intend absurd or unreasonable results. Act 21 requires the SOAB's assessment to "include the [SOAB's] determination of whether or not the child is in need of commitment for involuntary treatment due to a mental abnormality." 42 Pa.C.S. § 6358(c). Moreover, the juvenile court's commitment order "shall be consistent with the protection of the public safety and the appropriate control, care and treatment of the person." 42 Pa.C.S. § 6403(d). It is impossible to fulfill these legislative mandates unless the SOAB bases its assessment, and the juvenile court bases its commitment decision, on up-to-date information. By the time of T.B.'s commitment hearing in 2016, the information in his 2011 SOAB assessment was stale, and there was no way to tell whether T.B. continued to suffer from a mental abnormality without factoring in more recent assessments. It would have been absurd under these circumstances for the juvenile court to base its commitment determination on the 2011 evaluation alone. To make an appropriate commitment decision, and to provide T.B. with appropriate "control, care and treatment," it was necessary for the juvenile court to review the SOAB's assessments from the intervening years, 2012 through 2015. Accordingly, T.B.'s first argument fails.

In his second argument, T.B. contends that his commitment order exceeded the scope of this Court's remand order. According to T.B., we

merely directed the juvenile court to order the SOAB to conduct a new assessment if the SOAB had reviewed privileged information in its 2011 assessment. The juvenile court, T.B. argued, ventured beyond our order by reviewing additional documents, i.e., T.B.'s assessments from 2012 through 2015, in the course of ordering T.B.'s commitment.

We disagree with T.B.'s construction of our remand order. We instructed the juvenile court to ensure that the SOAB did not review privileged material while assessing T.B. *T.B.*, 75 A.3d at 497. Nothing in our order precluded the SOAB from reviewing *non*-privileged materials in making its assessment or continuing to perform annual assessments. Nor did our order preclude the juvenile court from reviewing any *non*-privileged materials in the course of commitment proceedings. Thus, all proceedings on remand were perfectly valid. The SOAB only reviewed non-privileged materials in its annual assessments, and the juvenile court only reviewed non-privileged materials in making its 2016 commitment determination. Thus, T.B.'s second argument fails.

Finally, T.B. argues that the juvenile court erred on January 8, 2014 by ordering the county solicitor to file a civil commitment petition pursuant to 42 P.S. § 6403. We disagree. Our decision in *T.B.*, 75 A.3d at 485, triggered an entirely new round of commitment proceedings. To complete these proceedings properly, it was necessary for the court to order a new commitment petition.

To elaborate, on August 30, 2011, the SOAB concluded that T.B. was in need of involuntary treatment. On October 19, 2011, the juvenile court denied T.B.'s motion to strike the SOAB's assessment. T.B. appealed this order. On January 6, 2012, while T.B.'s appeal was pending, the juvenile court determined that there was *prima facie* evidence that T.B. needed involuntary treatment. On January 19, 2012, the county solicitor filed a petition for T.B.'s involuntary commitment. On March 1, 2012, the juvenile court ordered T.B.'s involuntary commitment, prompting T.B. to file a second appeal. On June 24, 2013, this Court vacated the juvenile court's order denying T.B.'s motion to strike the SOAB's assessment; vacated the March 1, 2012 commitment order; and remanded with instructions for the SOAB to perform a new assessment if its 2011 assessment included privileged information. *In Re T.B.*, 75 A.3d at 485.

On remand, a new round of proceedings took place. The parties agreed that the SOAB had reviewed privileged information about T.B. and agreed on a redacted record for the SOAB to review. On September 23, 2013, the SOAB performed a new assessment based upon the redacted version and concluded that T.B. needed further treatment. On January 6, 2014, the juvenile court held a hearing based on the new assessment and found *prima facie* evidence for T.B.'s involuntary commitment. Finally, on January 8, 2014, the juvenile court ordered the county solicitor to file a new petition for involuntary commitment.

T.B. protests that the juvenile court erred by ordering a new petition for involuntary commitment. In view of the procedural history of this case, we conclude that the order was proper. Because there was a new round of commitment proceedings, a new commitment petition was necessary to satisfy section 6403's requisites and protect T.B.'s procedural rights.

For these reasons, we affirm the juvenile court's order requiring T.B.'s involuntary commitment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2016